ESTATE OF CHARLES H. JAMES, DECEASED, THE FIRST PENNSYLVANIA BANKING AND TRUST COMPANY, AND CHARLES MASON JAMES, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 93291. Filed June 4, 1963.

*Edwin S. Henry, Jr.*, for the petitioner.
*Albert Squire*, for the respondent.

HOYT, *Judge:* The respondent determined a deficiency of $50,371.95 in the estate tax for the estate of Charles H. James, deceased. A remainder interest in the principal of the testamentary trust created by his will was bequeathed to charity. The only adjustment which is contested is the disallowance of a charitable deduction of $138,808.41 for this bequest. The issue for decision is whether under the provision of the will an ascertainable standard is provided which limits the invasion of trust corpus for the benefit of the income beneficiaries.

### FINDINGS OF FACT

Charles H. James, the decedent, died testate on June 11, 1957, a resident of Philadelphia, Pa. His will was duly probated, and Charles Mason James and the First Pennsylvania Banking & Trust Co. were appointed coexecutors of the estate. The estate tax return was filed with the district director of internal revenue at Philadelphia, Pa.

The decedent's will, after directing his executors to pay his debts and funeral expenses, left the entire residuary estate in trust. The will required the trustees to pay an annuity of $100 per month to a domestic servant in recognition of her faithful service. The balance of the trust income was to be divided between the decedent's nephew, Charles Mason James, and the decedent's niece, Elizabeh James Hart. Charles was to receive two-thirds of the balance for his life, and if he survived his sister, Elizabeth, he was to receive the entire amount. Elizabeth was to receive one-third of the balance for her life, but if she survived Charles she was to receive one-half. If she survived both Charles and his daughter, Margaret, she would receive the entire amount.

Margaret, therefore, would take only on her father's death. If Charles survived Elizabeth then Margaret would receive the entire balance, but if Elizabeth survived Charles, then Margaret would receive only one-half of the remaining trust income. In either case the income was to be applied, to the extent necessary, to her main-

tenance, support, and education until she became 35 years of age, and then she was to receive the entire balance directly for her life.

The will also provided that the principal of the trust may be invaded in accordance with the following provision:

FOURTH: (Emergency Clause.) My Trustees named herein are hereby authorized to pay at any time, and from time to time, any portion or portions of the principal of the funds held in trust hereunder unto or for the account of any beneficiary either for comfortable maintenance and support, for educational requirements, illness, operations, or for any reason whatsoever which shall to my Trustees, in their sole discretion, seem sufficient. Any payments so made shall, so far as is practicable in the discretion of my Trustees, be charged without interest against the share of principal represented by the individual benefited thereby, either at the time of such payment or at the time of any subsequent division or distribution of the said fund.

Upon the death of the last survivor of Charles, Elizabeth, and Margaret (and termination of the aforementioned annuity), the will provided that the remainder of the trust would pass in fee to the Baptist Home of Philadelphia, which the parties have conceded qualifies for the charitable deduction provided in section 2055 of the Internal Revenue Code of 1954. Charles Mason James, one of the life income beneficiaries, and the First Pennsylvania Banking & Trust Co. were named as trustees to serve without bond and without the duty to file any accounting.

The three named life income beneficiaries all survived the testator and at the date of decedent's death, Charles was 47 years old, Elizabeth was 44, and Margaret was 13. The gross estate consisted of assets valued at more than $1,300,000. The anticipated net income of the residuary trust, after commissions, taxes, and the annuity, is approximately $32,900. Charles' two-thirds share is around $21,900 and the one-third share which Elizabeth receives is about $10,900.

For many years before the decedent's death Charles had been connected with the Industrial Research Department in the University of Pennsylvania, Department of Works School. This work was interrupted by service in the U.S. Navy during World War II, but after the war he returned to do research and writing. He also did some teaching from 1947 to 1956. From 1956 to 1959 he was connected with an educational survey at the University of Pennsylvania, and since that time he has been engaged in private research. Charles maintains a house for himself, his wife, and his daughter, Margaret. At the time of trial in 1963, the total family expenditures were approximately $19,000 per year. This was slightly higher than at the time of decedent's death, but they are likely to decrease in 4 or 5 years when Margaret finishes college and is financially independent.

In addition to his share of the trust income, amounting to around $21,900 annually, Charles receives about $5,000 annually from an

irrevocable trust created by him and will continue to receive this income for his life. As a beneficiary of his mother's estate, he will acquire an interest of between $50,000 and $60,000 when the estate is settled. Charles also has about $13,000 in savings accounts and Government bonds and has complete access to the income and principal of an investment advisory account with a principal of approximately $35,000.

Elizabeth lives with her husband and has no children. Their joint expenses for the house and food amount to about $7,000 annually, and Elizabeth also has personal expenditures of around $8,300 per year. The husband has income of his own.

Other than her share of the trust income, which is about $10,900 a year, Elizabeth has a lifetime interest in the income of another trust which is around $5,000 annually. Like her brother, Charles, she has an outright interest of $50,000 to $60,000 in her mother's estate and also has a right to income and principal of an investment advisory account valued at $35,000 to $45,000.

OPINION

An absolute gift to charity of a remainder interest in a testamentary trust is deductible from the gross estate under section 2055 of the Internal Revenue Code of 1954. However, if his remainder interest may be invaded for noncharitable purposes section 20.2055-2(a) of the Income Tax Regulations states that the deduction may be taken "only insofar as that interest is presently acertainable, and hence severable from the noncharitable interest." When a power to invade the remainder interest exists the regulations go on to state in section 20.2055-2(b) that, "the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power." These portions of the regulations have been in effect under successive reenactments of what is now section 2055 and are identical with those cited with approval by the Supreme Court in *Merchants' Bank* v. *Commissioner*, 320 U.S. 256 (1943).

The remainder interest left to the Baptist Home of Philadelphia does not have a value which is capable of determination unless the trustees are limited in their invasion of the trust principal by some ascertainable standard. *Ithaca Trust Co.* v. *United States*, 279 U.S. 151 (1929). The respondent contends that the standard in the present case is not ascertainable since it provides in article Fourth for invasion,

either for comfortable maintenance and support, for educational requirements, illness, operations, or for any reason whatsoever which shall to my Trustees, in their sole discretion seem sufficient.

In determining the extent of the power of invasion, we are concerned with the element of possibility. The fact that invasion is not probable has no effect on whether or not a standard exists; it is the ascertainability of the ultimate charitable interest as of the date of the testator's death that determines the issue. *Henslee* v. *Union Planters Bank*, 335 U.S. 595 (1949). The gift over to charity must be sufficiently certain in monetary value to qualify as a charitable deduction; to put it another way, the standard for invasion must be capable of being interpreted in a monetary sense.

There have been numerous cases dealing with the question of whether an ascertainable standard is provided under the terms of a will.[1] In *Ithaca Trust Co.*, *supra*, the will provided that the trustees could invade principal for any sum "that may be necessary to suitably maintain her in as much comfort as she now enjoys." The Court held that this was an ascertainable standard and stated:

The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. * * * There was no uncertainty appreciably greater than the general uncertainty that attends human affairs.

In general, an ascertainable standard has been found when the language of the will allows invasion only to the extent necessary to sustain the beneficiary's customary mode of living. *Berry* v. *Kuhl*, 174 F. 2d 565 (C.A. 7, 1949); *Estate of Mary Cotton Wood*, 39 T.C. 919 (1963); *Estate of Oliver Lee*, 28 T.C. 1259 (1957). We have found no case which goes beyond this in finding a reasonable standard. See *State Street Bank & Trust Co.* v. *United States*, 313 F. 2d 92 (C.A. 1, 1963).

In *Merchants' Bank*, the testator allowed invasion for the "happiness" of the beneficiary, and the trustee was directed to use his discretion with liberality. Also, in *Henslee* v. *Union Planters Bank*, *supra*, invasion was allowed for the "pleasure, comfort, and welfare" of the beneficiary. In both cases the Court states that the purposes for which the funds could and might be spent were not subject to any reliable prediction, and, therefore, held that no ascertainable standard was provided.

The trustees here are empowered to distribute corpus without being required to file any accountings "for any reason whatsoever which shall to my Trustees, in their sole discretion, seem sufficient." This language goes much farther than to provide for invasion for the beneficiaries' normal standards of living. It is as vague and broad,

---

[1] A summary of many of these cases is found in the appendix to the decision of *Kline* v. *United States*, 202 F. Supp. 849 (N.D. W. Va. 1962), affirmed per curiam 313 F. 2d 633 (C.A. 4, 1963).

if not more so, than that in either *Merchants' Bank* or *Henslee*, and is clearly not susceptible to any reliable prediction or certainty.

In *State Street Bank*, the court held that the words, "and for any other reasonable requirement" following the words "for her comfortable support and maintenance" rendered the standard immeasurable. *A fortiori*, the language in the present case which allows the trustees to invade principal "for comfortable maintenance and support, for educational requirements, illness, operations, or for any reason whatsoever which shall to my Trustees, in their sole discretion, seem sufficient" precludes the finding of an ascertainable standard. Since no ascertainable standard is provided, the value of the charitable remainder as of the date of decedent's death cannot be determined. It is therefore not deductible under section 2055 of the 1954 Code.

The petitioner argues that since the provision in question is entitled "Emergency Clause" the invasion of corpus is limited to emergencies and, accordingly, the standard is ascertainable. That the testator here did not intend to so limit the trustees is apparent from the language of the clause itself. Invasion is permitted for "comfortable maintenance and support," for "educational requirements," "or for any reason whatsoever." Such words certainly do not connote a sense of emergency. The general heading of the clause "(Emergency Clause)" clearly does not limit the broad powers of invasion therein provided nor does it make the standard measurable. We hold that the power invested in the trustees is not limited to emergencies nor is it limited by any other definite standard. Neither does the fact that this power is to be exercised in a fiduciary capacity provide the requisite restrictions. See *Strite* v. *McGinnes*, 215 F. Supp. 513 (E.D. Pa. 1963). All such discretionary powers granted to testamentary trustees are exercisable in a fiduciary capacity.

The petitioner also argues that since the broad phrase, "any reason whatsoever," is preceded by specific terms that it is limited to these terms by application of the *ejusdem generis* principle. However, it is also true that additional words import additional meaning, and we therefore hold that this phrase "authorized the trustees to provide something more; to wit, a higher—and hence immeasurable—standard." *State Street Bank & Trust Co., supra*. It is also significant that the phrase in question is joined to the preceding specific language by a disjunctive conjunction.

As a result of our holding that no ascertainable standard is provided here we do not reach the factual question of valuation.

*Decision will be entered under Rule 50.*