Sands G. Falk v. Commissioner.
Falk v. Commissioner
Docket No. 139-63.
United States Tax Court
T.C. Memo 1965-22; 1965 Tax Ct. Memo LEXIS 307; 24 T.C.M. (CCH) 86; T.C.M. (RIA) 65022; February 9, 1965
*307 Petitioner established an inter vivos trust whereby the trustees had power to distribute the income and/or principal of the trust if they deemed it necessary for his wife's "adequate care, comfort, support and maintenance," with due regard to the availability of other funds to her, and with the remainder to third parties. Petitioner's wife consented to having the entire gift treated as having been made one-half by her. Held: The trust instrument provided measurable standards limiting the power of invasion of both income and principal. Estate of Mary Cotton Wood, 39 T.C. 919(1963), followed. Held further: On the facts, the possibility of invasion of the income was not so remote as to be negligible, but the invasion of the principal was so remote as to be negligible. Louis Maier, 41 E. Mason St., Milwaukee, Wis., and John J. Ottusch, 660 E. Mason St., Milwaukee, Wis., for the petitioner. Jerome M. Feltman, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The Commissioner determined a deficiency in petitioner's gift tax for the taxable year 1959 in the amount of $19,248.35. The parties have made certain concessions which will be reflected in a Rule 50 computation. *308 The only issue remaining for decision is whether the interest of third parties under a gift in trust was ascertainable at the time of the gift so that petitioner is entitled to the gift-splitting benefits of section 2513(a)(1) of the Internal Revenue Code of 1954. [1]
Findings of Fact Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner, Charlotte G. Falk, his wife, and family live in Milwaukee, Wisconsin. Petitioner and Charlotte were at all times material hereto husband and wife, having been married on June 20, 1942. They have seven children whose names and birth dates are as follows: Name
Date of Birth
Gordon Falk
May 30, 1943
Kathleen Falk
January 23, 1945
Mary Falk
October 29, 1948
Barbara Falk
January 29, 1952
Robert Falk
November 24, 1953
Michael Falk
May, 26, 1955
Elizabeth Falk
July 2, 1958
Petitioner filed a timely Federal gift tax return for the taxable year 1959 with the district director of internal revenue at Milwaukee, Wisconsin. Charlotte indicated her consent on petitioner's gift *309 tax return for 1959 to have the gift made in 1959 considered as made one-half by petitioner and one-half by her. On December 9, 1959, petitioner entered into an agreement with the Marine National Exchange Bank of Milwaukee, Wisconsin, Edward G. Ricker and Louis Maier, as trustees establishing the Sands G. Falk Family Trust (hereinafter referred to as the Family Trust). On the same date petitioner made a gift to the Family Trust of his one-twelfth interest in the Herman W. Falk Hope Trust, dated December 20, 1940. The value of this gift as of the date of gift was $161,531.99. On December 10, 1959, petitioner made an additional gift to the Family Trust of a life insurance policy issued by Northwestern Mutual Life Insurance Company on the life of Charlotte. The value of this gift as of the date of gift was $307.87. The pertinent parts of the Family Trust are as follows: Article 4 4.1 The Trust shall be held, administered and distributed as follows: (01) During the life of Grantor's wife: (a) Trustees shall pay to any one or more of a group composed of Grantor's wife and issue, or expend or apply for their benefit, so much and in such proportions, or all, of the net income, as Trustees *310 shall from time to time deem appropriate under all the facts and circumstances then existing. Any portion of the net income not so distributed shall be accumulated and become part of the principal of the Trust. (b) In addition to any payments of income made to or for the benefit of Grantor's wife, and issue, as hereinabove provided Trustees shall pay to Grantor's wife and issue, or expend, or apply for their benefit, such part or parts of the principal of the Trust as Trustees shall from time to time deem appropriate under all of the facts and circumstances then existing which Trustees deem relevant, (in addition to any other funds known by Trustees to be available to Grantor's wife and issue for such purposes) to provide for the proper care, comfort, support, maintenance and general welfare of Grantor's wife and issue, and for the proper education of Grantor's issue. The receipt of Grantor's wife for all such sums shall discharge the Trustees for any payments made to her, either for her own use or benefit or for the use or benefit of the children, and she need not account to any person or Court for any sum so received by her. * * *
(4.4) In determining whether or not to make any payments *311 of either income or principal which may be made in the Trustees' discretion, the Trustees may, among other things, take into consideration any other funds which may be available to any beneficiary, the age and state of health of any beneficiary, the marital status of any beneficiary, the aptitude and desire of any beneficiary for higher education, and the amount of, principal and income of each trust hereunder. While no one such factor or combination of such factors need be conclusive or final upon the Trustees, Grantor's primary purpose and intent is to provide for the adequate care, comfort, support and maintenance of Grantor's wife during her lifetime, taking into consideration other funds known by Trustees to be available to her from other sources, including the Grantor, and after the Grantor's death, the standard of living that Grantor was able to provide for her during his lifetime, and thereafter, or in the event Grantor's wife does not survive him, to provide for the education, health and welfare of Grantor's children to the fullest extent possible. The Trustees shall therefore be fully protected in paying out or applying any part of the whole of the principal of any Trust *312 hereunder for the use and benefit of Grantor's wife, and after her death, for the use and benefit of Grantor's children, without regard for the effect thereof upon the possible interests of any grandchildren or more remote descendants of Grantor or any other contingent beneficiaries under this Trust. * * * Article 10 (10.5) Notwithstanding that the Grantor, any Trustee, or any of the beneficiaries under this agreement may at any time be a resident elsewhere than the State of Wisconsin, this agreement shall be regarded for all purposes as a Wisconsin document and the validity and construction thereof shall be determined and governed in all respects by the laws of the State of Wisconsin. The situs of the trust, however, shall be deemed to be from time to time at such place where the Trustees shall be administering the trust, but this provision shall not prevent the Trustees from removing the trust property, or any part thereof, outside of the jurisdiction of the State of Wisconsin at any time and so often as they deem advisable. * * *
Article 11 (11.2) The primary beneficiaries shall initially mean the following: Charlotte G. Falk, wife of the Grantor, who was born February 26, 1920, *313 and the following, who are children of the Grantor: Gordon Falk, who was born May 30, 1943; Kathleen Falk, who was born January 23, 1945; Mary Falk, who was born October 29, 1948; Barbara Falk, who was born January 29, 1952; Robert Falk, who was born November 24, 1953; Michael Falk, who was born January 26, 1955; Elizabeth Falk, who was born July 2, 1958. * * *
Article 12 (12.1) This Trust shall be and is hereby declared irrevocable and not subject to any amendment, alteration or termination prior to the provisions herein contained for the termination thereof. Any future gift of property to this Trust, whether by the Grantor or any other person shall likewise be irrevocable, and any right, title or reversionary interest therein of any kind or description which the Grantor may have or subsequently acquire by operation of law or otherwise, shall, by the making of such gift to this Trust, be renounced and relinquished forever. After Charlotte's death the accumulated income, as well as the principal, was to be for the benefit of petitioner's children. Petitioner was 42 years old at the date of the gift. His life expectancy at that time was 30 years. Charlotte was 39 years old at the date *314 of the gift and her life expectancy was 32 years. When the gift was made, petitioner and Charlotte had been married 17 years and had seven children ranging in age from one to sixteen years. Their life together from the date of their marriage to the present has been filled with happiness. Petitioner grew up in California where he attended high school and worked his way through college. After graduation in 1939, he came to Milwaukee and started work at the Falk Corporation in the tin shop. In the next 20 years he worked his way up through various jobs to the position of Eastern regional sales manager, the position he held at the time of the gift. Subsequent to the date of the gift he was made sales manager of the corporation. Petitioner did not have an employment contract with the Falk Corporation. Petitioner's income and various expenditures for the years 1954 through 1959 are reflected in the following schedule: ITEM
1954
1955
1956
Income: [1]
Herman W. Falk Hope Trust
$ 4,489
$ 5,373
$ 7,521
Herman W. Falk Testamentary
6,056
7,367
11,051
Trust
Dividends and Interest
7,517
7,146
8,567
Total income other than
$18,062
$19,886
$27,139
salary
Salary
21,786
20,513
22,267
Total Income
$39,848
$40,399
$49,406
Various Expenditures: Federal Income Taxes
$10,280
$ 8,076
$12,968
Wisconsin Income Tax
2,427
2,318
3,774
Charitable Contributions
2,915
3,192
3,247
Gifts to Children
600
720
720
Principal and Interest
300
697
1,264
Payments on Real Estate
Mortgage & Personal Note [2]
Real Estate Taxes
733
1,034
Total of above expenditures
$16,522
$15,736
$23,007
Available for other
$23,326
$24,663
$26,399
expenditures
*315 ITEM
1957
1958
1959
Income: [1]
Herman W. Falk Hope Trust
$ 6,764
$ 6,805
$ 5,167
Herman W. Falk Testamentary
9,823
9,823
11,226
Trust
Dividends and Interest
8,457
8,584
7,919
Total income other than
$25,044
$25,212
$24,312
salary
Salary
22,646
24,479
27,000
Total Income
$47,690
$49,682
$51,312
Various Expenditures: Federal Income Taxes
$10,176
$11,282
$13,868
Wisconsin Income Tax
3,008
6,992
1,694
Charitable Contributions
3,870
3,361
3,413
Gifts to Children
720
840
840
Principal and Interest
1,174
1,377
1,157
Payments on Real Estate
Mortgage & Personal Note [2]
Real Estate Taxes
1,034
1,086
2,496
Total of above expenditures
$20,882
$24,938
$23,468
[3]
Available for other
$26,808
$24,744
$27,844
expenditures In addition to the expenditures listed on the above schedule, petitioner had the following additional expenditures each year: insurance premiums, food, clothing, tuition for the children, and expenses of maintaining a house. During the years 1954 through 1959, petitioner spent approximately $15,550, $16,442, $17,600, $17,872, $16,496 and $18,562, respectively, for the additional expenditures referred to *316 above. The funds remaining each year after taking into consideration all of the above expenditures were utilized by petitioner for investment purposes. Petitioner and Charlotte live on a modest and moderate level. Petitioner's annual gross income subsequent to 1959 has been approximately $45,000, with total expenditures, including taxes, of approximately $37,000. On December 9, 1959, petitioner was sole owner of the following assets: Cash
$ 15,000
Publicly traded stock at market quo-
tation
181,726
Municipal bond
5,000
Non forfeitable accumulations under
pension plan
3,000
Stocks not publicly traded: Hell Company, at price received when
sold on 12/24/59
15,438
Falk Corporation - 553 shares at value
of $69.75 per share [1]
38,572
Interest in Falk Corporation Profit
Sharing Fund
18,000
Total
$276,736 As of the same day, petitioner was joint owner with right of survivorship with Charlotte of the following assets: Savings account
$ 1,619.91
Home - cost, plus improvements
53,684.65
Total
$55,304.56 In addition to the above assets, petitioner had an interest in the Herman W. Falk Testamentary Trust. *317 This interest was worth $195,788 as of December 9, 1959. In the event of petitioner's death prior to February 17, 1967, at which time the trust terminates and the principal is to be distributed to beneficiaries, the principal would pass to petitioner's issue without any interest therein for Charlotte. Also in the event of petitioner's death prior to February 17, 1967, all income from petitioner's share would be payable to his issue or for their benefit without any interest therein for Charlotte. As of December 9, 1959, the death benefit proceeds of certain life insurance policies on the life of petitioner were $92,500. Charlotte was the beneficiary on these policies. Petitioner's debts as of the date of gift totalled $12,830, including a mortgage on his home of $7,830. Charlotte is a college graduate who, prior to her marriage to petitioner, was a public school teacher in Milwaukee for one year. On December 9, 1959, Charlotte owned 184 shares of common stock in the Falk Corporation which, valued at $69.75 per share, represented a fair market value of $12,834. Charlotte also owned the death benefit in a "split-dollar" life insurance policy on the life of petitioner in which the Falk *318 Corporation was the owner of the cash surrender value. As the cash surrender value increased, the death benefit portion decreased. During 1959 this policy had a death benefit of $96,716. Charlotte also owned 38 shares of stock in the Heil Company which were sold on December 24, 1959, for $2,375. As stated above, Charlotte was an owner in joint tenancy with petitioner of a savings account in the Falk Corporation Credit Union having a balance on December 9, 1959, of $1,619.91. Charlotte was also an owner in joint tenancy with petitioner of their residence at 5827 North Maitland Court, Whitefish Bay, Wisconsin. The cost of said home when first acquired on August 1, 1955, was $46,000. Improvements thereto from the date of acquisition to December 9, 1959, such as furnishing and installation of carpeting, wall and floor tile, wooden cabinets in various rooms, and bathroom and kitchen fixtures and appliances, were installed at a total cost of $7,684.65. Charlotte's total annual income, all of which was derived from dividends on the Falk Corporation common stock she owned during the years 1954 through 1959, respectively, was $650, $628, $828, $737, $736 and $736. Charlotte's mother was alive *319 in December 1959. Her mother's estate at that time was approximately $25,000. Petitioner and Charlotte were in good health at the time of the gift. Petitioner, together with his attorney and bank, discussed during 1959 the possibility of drawing up a will for petitioner as part of an estate plan. At this time petitioner already had a will in existence. The idea for the trust in question grew out of these conferences. Petitioner executed a new will on June 1, 1960. This will, together with the trust, was part of an over-all estate plan. Under the will petitioner created a marital trust for Charlotte and another trust for his entire family. Based upon the life expectancy of Charlotte, as of December 9, 1959, the values of a life estate and a remainder interest in $161,839.86 were $101,810.22 and $60,029.64, respectively. As of the date of trial, no portion of the income or principal of the Family Trust had been distributed to Charlotte. Petitioner reported the gift in question as being made one-half by him. Charlotte, having consented to the gift, reported one-half of the amount on her gift tax return. Respondent, in his deficiency notice, disallowed gift-splitting by petitioner and *320 Charlotte stating: you are not entitled to consider any portion of such gift as having been made by your spouse, under the provisions of section 2513 of the Internal Revenue Code of 1954, nor is any deduction allowable to you for a gift to your spouse under the provisions of section 2523 of the Internal Revenue Code of 1954. [2] * * * Opinion Petitioner maintains that he is entitled to use the gift-splitting provision of section 2513 for two reasons. He first maintains that although his wife is named as a beneficiary of the trust, it was never his intention to make a gift to her of either the income or principal of the trust. In the alternative, petitioner argues that giftsplitting is available even though one's spouse is named as a beneficiary of a trust when the trustees' power to make payment to the spouse is limited by certain standards by which the possibility of a payment can be gauged and the facts show that this possibility is remote. He maintains that the trustees' powers in this case are limited by standards and that *321 the possibility of Charlotte ever being paid part of the income or principal is so remote that the value of her interest is negligible. Respondent takes the position that the wife is a primary beneficiary of the trust, that the trust does not contain sufficient standards which limit the trustees' discretion for providing her with any or all of the income or principal of the trust and that even if there were sufficient standards, the petitioner has failed to provide sufficient facts to show that the likelihood of the exercise of the power to distribute either income or principal to Charlotte is so remote as to be negligible. We partially agree with petitioner for the reasons set forth below. Section 2513(a) provides, in part, as follows: (a) Considered as Made One-Half by Each. - (1) In General. - A gift made by one spouse to any person other than his spouse shall, for the purposes of this chapter, be considered as made one-half by him and one-half by his spouse. * * * Where the gift is by one spouse in part to his spouse and in part to third parties, the gift-splitting provisions are only available to the part going to the third party and only if that part of the gift is ascertainable *322 at the time of the gift, and hence severable from the gift made to the spouse. Section 25.2513-1(b)(4), Gift Tax Regs. In this case, petitioner created an inter vivos trust and transferred to it property having a value of $161,839.86. The trust provided that under certain circumstances and conditions the income and/or principal could be distributed to his wife and/or children. Accordingly, if the amount the children are to receive is ascertainable at the time of the gift, then, to that extent, petitioner is entitled to utilize the gift-splitting provisions of section 2513. Whether the amount of the gift to the children can be ascertained at the date of the gift depends upon the answer to two separate questions. The first question we are concerned with is whether the power to invade the income and/or principal was absolute or was limited by certain ascertainable standards by which the possibility or probability of invasion could be measured or stated in definite terms of money. Ithaca Trust Co. v. United States, 279 U.S. 151 (1929). This question has arisen mainly in the area where it was necessary to determine whether a power given to a trustee to invade the principal of a trust *323 for the benefit of the life tenant made the bequest of the remainder to a charity so indefinite as to render it impossible to ascertain the value of such bequest for purposes of a charitable deduction. Estate of Nathan P. Cutler, Jr., 5 T.C. 1304 (1945), affd. sub nom. Newton Trust Co. v. Commissioner, 160 F. 2d 175 (C.A. 1, 1947); Ithaca Trust Co. v. United States, supra; Merchants Bank v. Commissioner, 320 U.S. 256 (1943); Henslee v. Union Planters Bank, 335 U.S. 595 (1949). However, we stated in Andrew Geller, 9 T.C. 484, 495 (1947) that "There appears no logical distinction between cases involving deduction of charitable bequests, and one, as here, involving gifts, for the question is whether values can be ascertained." An ascertainable standard has been found when the language of the will or trust allows invasion of the principal only to the extent necessary to sustain the beneficiary's customary and present standard of living. Such words as "comfort and support," Estate of Anna Finley Kenny, 11 T.C. 857 (1948), and Estate of Edwin E. Jack, 6 T.C. 241 (1946); "maintenance and support," William H. Robertson, 26 T.C. 246 (1956), and Berry v. Kuhl, 174 F. 2d 565 (C.A. *324 7, 1949); "comfort and welfare," Blodget v. Delaney, 201 F. 2d 589 (C.A. 1, 1953); "proper care, support and maintenance," Lincoln Rochester Tr. Co. v. Commissioner, 181 F. 2d 424 (C.A. 2, 1950); and "support, maintenance, welfare and comfort," Estate of Mary Cotton Wood, 39 T.C. 919 (1963), have all been found to supply an ascertainable standard based upon the beneficiary's present standard of living. See also Rev. Rul. 54-285, 1954-2 C.B. 302. In those cases where an ascertainable standard has not been found it was because the words used in the will or trust did not limit the trustees' powers of invasion to the present standard of living of the beneficiary. Such words as "and/or happiness of my said wife," Merchants Bank v. Commissioner, supra; "pleasure, comfort and welfare," Henslee v. Union Planter's Bank, supra; "her comfortable support and maintenance and for any other reasonable requirement," State Street Bank and Trust Company v. United States, 313 F. 2d 29 (C.A. 1, 1963); "for comfortable maintenance and support, for educational requirements, illness, operations, or for any reason whatsoever," Estate of Charles H. James, 40 T.C. 494 (1963); and "the support, the *325 maintenance, the welfare and comfort * * * and for any other purpose," Zentmayer's Estate v. Commissioner, 336 F. 2d 488 (C.A. 3, 1964), affirming a Memorandum Opinion of this Court, have been found not to be subject to any reliable prediction and, accordingly, have been held not to provide an ascertainable standard. In the instant case the trustees were given the power to distribute income to Charlotte as they "shall from time to time deem appropriate under all the facts and circumstances then existing." The trustees were also given power to distribute principal to Charlotte as they "from time to time deem appropriate under all of the facts and circumstances then existing which Trustees deem relevant, (in addition to any other funds known by Trustees to be available to Grantor's wife * * * for such purpose) to provide for the proper care, comfort, support, maintenance and general welfare of Grantor's wife * * *." If the trust instrument stopped here we could find that as regards the income from the trust no ascertainable standards were provided. Estate of Charles H. James, supra; Merchants Bank v. Commissioner, supra. However, the petitioner added another clause to the trust instrument *326 wherein he stated: In determining whether or not to make any payments of either income or principal which may be made in the Trustees' discretion, the Trustees may, among other things, take into consideration any other funds which may be available to any beneficiary, the age and state of health of any beneficiary, the marital status of any beneficiary, the aptitude and desire of any beneficiary for higher education, and the amount of, principal and income of each trust hereunder. While no one such factor or combination of such factors need be conclusive or final upon the Trustees, Grantor's primary purpose and intent is to provide for the adequate care, comfort, support and maintenance of Grantor's wife during her lifetime, taking into consideration other funds known by Trustees to be available to her from other sources, including the Grantor, and after the Grantor's death, the standard of living that Grantor was able to provide for her during his lifetime, * * * In construing the trust instrument, we must be guided by the intention of the grantor. Estate of Malcolm Lloyd, Jr., 24 T.C. 624, 629 (1955); First Nat. Bank in Oshkosh v. Barnes, 237 Wis. 627, 298 N.W. 215 (1941); First Wisconsin Trust Company v. Perkins, 275 Wis. 464, 82 N.W. 2d 331 (1957); *327 Welch v. Welch, 235 Wis. 282, 290 N.W. 758 (1940). In determining the intention of the grantor, we must look to the whole trust instrument and not just to a particular provision or clause therein. Uihlein v. Uihlein, 11 Wis. 2d 219, 105 N.W. 2d 351 (1960); Estate of Malcolm Lloyd, Jr., supra.When the trust instrument here involved is read as a whole we have no doubt that petitioner intended and so provided for his wife to receive a distribution of income and/or principal of the trust only when it was necessary to properly care for her in the standard and manner to which she was accustomed. This being the situation, the trustees were bound by ascertainable standards which were measurable in terms of money. Ithaca Trust Co. v. United States, William H. Robertson, and Berry v. Kuhl, all supra. In the recent case of Estate of Mary Cotton Wood, supra, wherein the words used in the trust instrument were identical with the words used herein, we stated: In our judgment the present case is on the same side of the line as Ithaca Trust, and not on the other side occupied by Merchants Bank and Henslee v. Union Planters Bank. Here the power of invasion was limited by the words "support, *328 maintain, welfare and comfort." We think that these four somewhat overlapping nouns were intended in the aggregate to describe the life beneficiary's standard of living in all its aspects and were not intended to incorporate such subjective and elusive concepts as "happiness," "pleasure," and "desire" which characterized Merchants Bank and Henslee v. Union Planters Bank * * * See also Lincoln Rochester Trust Co. v. Commissioner, supra; Blodget v. Delany, supra; Hartford-Connecticut Trust Co. v. Eaton, 36 F. 2d 710 (C.A. 2, 1929); Mercantile & Safe Deposit & Trust Co. v. United States, 172 F. Supp. 72 (D. Md. 1959). Cf. Zentmayer's Estate v. Commissioner, supra. Accordingly, we hold that the instrument in this case does provide a reasonable and acceptable standard whereby the power to distribute income and/or principal to Charlotte can be measured. This brings us to the second question wherein it is necessary to determine factually whether the likelihood of a distribution of income and/or principal to Charlotte is so remote as to be negligible in value. If the possibility of a distribution being made to Charlotte is so remote as to be negligible, then the entire gift in question *329 would be to third parties, allowing petitioner to utilize the gift-splitting provisions of section 2513. Estate of Mary Cotton Wood, supra; Estate of Oliver Lee, 28 T.C. 1259 (1957); William H. Robertson, supra.Whether the events will occur which, under the standards set forth in the trust instrument, will cause a distribution to be made to Charlotte must be determined from the facts as they exist at the date of the gift. William H. Robertson, supra; Estate of Eunice M. Greene, 11 T.C. 205 (1948); Estate of John W. Holmes, 5 T.C. 1289 (1945). Although we cannot look at events which have occurred subsequent to the date of the gift in determining the question before us, Estate of John W. Holmes, supra, we can look at events occurring after the date of the gift if they serve to clarify or establish the circumstances as they existed at the date of the gift. Lincoln Rochester Trust Company v. McGowan, 217 F.2d 287 (C.A. 2, 1954). At the date of the gift petitioner was 42 years old with a life expectancy of 30 years. He had been employed by the Falk Corporation ever since 1939. At the date of the gift he was the Eastern regional sales manager of the corporation with an annual salary *330 of $27,000. His gross income, including salary was over $51,000. His future with the corporation at the date of the gift was very promising. This is borne out by the fact that he was made sales manager of the Falk Corporation shortly after the gift in question. Petitioner had built up a sizable estate, with all probability of increasing in size as the years went by. His estate at the date of the gift, including assets jointly owned with his wife, had a value exceeding $600,000. We have found that petitioner and Charlotte lived modestly and well within their means. Petitioner had seven children, ranging in age from one to sixteen at the date of the gift. Even with this large family, petitioner was able through modest living to have funds available for investment each year. The total household expenditures (food, clothing, tuition) averaged approximately $17,000 for the years 1954 through 1959. This was for nine persons. Knowing the total household expenses for the family, we are of the opinion that a fair estimate of Charlotte's share would not be in excess of $5,000. Cf. Webster Investors, Inc. v. Commissioner, 291 F. 2d 192, 194 (C.A. 2, 1961), affirming a Memorandum Opinion of *331 this Court; Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). Petitioner's life expectancy was only 2 years shorter than that of the wife. The evidence of record is clear that petitioner and his wife had a happy marriage and that he was fully able to and did, in fact, support his wife through 17 years of marriage. In view of the evidence regarding petitioner's age, life expectancy, annual income, living expenses, estate, and his relationship with Charlotte, we are convinced that the possibilities of the trustees having to exercise their power with respect to the income and/or principal of the trust while petitioner is alive is so remote as to be negligible. However, we must also take into consideration the possibility that petitioner might have died immediately after the gift in issue was made. On this assumption, we are of the opinion that invasion of the income of the trust is not so remote as to be negligible. Charlotte at the date of gift was 39 years old. She had a college degree and was at one time a teacher. Besides the assets she owned jointly with her husband, Charlotte owned individually stock having a value of $15,209. She also was the owner of the death benefits of a *332 split-dollar life insurance policy on the life of petitioner which had a value of $96,716 at the date of the gift. In addition, she had an annual income of approximately $700 derived mostly from dividends on the stock she owned. Charlotte was also the beneficiary of life insurance policies on the life of her husband totalling $92,500. We also know that at the date of the gift, petitioner was considering the making of a new will. His present will was not admitted in evidence. A new will was executed in June 1960 wherein his wife was amply provided for. Since the will was not in existence at the date of the gift, we cannot accept its terms as indicating whether Charlotte will ever need any part of the income or principal of the Family Trust. But we do use the will as establishing the happy and close relationship between petitioner and his wife. Cf. Lincoln Rochester Trust Company v. McGowan, supra.In any event, Charlotte does have a statutory right of election in Wisconsin which would entitle her to one-third of petitioner's estate. Wis. Stat. Ann. secs. 233.13 and 233.14 (1957). Accordingly, if petitioner died immediately after the gift in question, Charlotte would have available *333 for her own needs an estate in excess of $200,000 and a home valued at $50,000. However, she would also inherit the expenses of running and maintaining that home and providing for the increasing needs of herself and her seven children. Although her current needs are relatively small, there is every likelihood that those needs will increase in the future. With the cost of living on the rise and with the increasing possibility of prolonged illnesses which involve large medical bills as Charlotte grows older, together with the increasing needs of her children, we cannot say for certain that she would not have occasion to draw on the income of the trust. Although her annual income could be in the neighborhood of $10,000 if she made wise investments, we cannot say that under all possible circumstances this sum would be sufficient to maintain her in the standard to which she has been accustomed. Nevertheless, we do not think that her needs would be so great that she should have occasion to utilize part of the corpus of the trust. The trust income, together with her own income, would be sufficient to maintain her in her present standard of living. Furthermore, before she would be entitled *334 to any corpus of the trust, she would be required to exhaust her own capital as the trustees were instructed to take into consideration funds available to her from other sources before releasing any trust corpus to her. Accordingly, we conclude that the possibility of invasion of the income of the trust for Charlotte's benefit is a definite possibility where we assume that petitioner might prematurely die. The parties having stipulated the value of the life estate and the value of the remainder interest of the trust, we hold that the remainder interest is available for the giftsplitting provisions of section 2513. Estate of Oliver Lee, supra.
Decision will be entered under Rule 50. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954.↩
1. Includes dividend income earned by Charlotte. ↩
2. Interest paid on note only. ↩
3. Deduction claimed for two years' real estate taxes paid in same year.↩
1. The parties stipulated that the value of the Falk Corporation stock for purposes of this case was $69.75 per share.↩
2. Sec. 2523 concerns "Gift to Spouse (Marital Deduction)." Petitioner does not contend in this case that sec. 2523↩ is applicable to any of the gifts here involved.