S. Samuel Di Falco, S.
The surviving executor is accounting for his administration of the estate from the date of the decedent’s death, March 19, 1932, to March 31, 1960. Numerous objections to the account have been filed by beneficiaries. The petition of the accounting executor requests a construction of the will and the fixation of his compensation for legal services rendered to the estate.
*366 The decedent was survived by his wife and two sons. The will contains specific bequests of articles to the widow, the two sons and a niece; a general legacy of $10,000 to the wife; a legacy to a charity; a trust of $15,000 for a grandson; and it disposes of real property in Maine and a specified sum of money among the widow and the sons in such a way as to treat all of them equitably. The residuary estate is divided into three equal parts, one of which is set up in trust for the widow, Elizabeth H. Rich, and the other two of which are bequeathed outright to the two sons, Stephen G. Rich and Gilbert J. Rich.
Construction of the will, (a) The accounting executor asks the court to determine the persons entitled to the remainder of the trust created for the benefit of the widow. She is still living. Both sons survived the decedent, but one has since died, leaving no issue. The other son is living and has issue. A construction of this portion of the will is said by certain of the respondents to be unnecessary at this time because the will is clear, the remainder is plainly contingent and no one can say who will ultimately take the remainder. In the opinion of the court, there is no present necessity for a judicial construction of the will. There is no ambiguity in the tenth paragraph of the will. It expressly provides that if, as actually happened, one of the sons should die without lawful issue surviving him, the share intended for the benefit of that son shall go to the other son, if he be living at the time the trust terminates. If the son now surviving shall not then be living, the corpus is to go to his issue per stirpes. The court cannot now determine whether this son will survive his mother or which of his descendents shall survive, and hence cannot decide which of the contingent beneficiaries will qualify to take the remainder.
(b) A second question of construction relates to the fourteenth paragraph of the will which reads: “ I direct that all estate, transfer, inheritance, succession, or other similar tax imposed upon or assessed against my estate or the transfer or devolution of any part thereof, to my said wife, Elizabeth H. Rich, or to my said grandson, Joseph McElroy Rich, or imposed upon or assessed against the said beneficiaries, shall be paid wholly out of my residuary estate.” It appears that the decedent during his lifetime had provided an insurance policy under which the insurer agreed to pay the decedent and his wife, and the survivor of them, $5,000 a year for life. The annuity contract was included in the decedent’s gross taxable estate and valued at approximately $50,000. The court is asked to decide whether the portion of the tax attributable to the inclusion of the annuity contract should be equitably allocated against the widow, or *367 whether the fourteenth paragraph of the will means that this portion of the tax is to be paid wholly out of the residue.
The decedent executed his will on June 16, 1924. A codicil dated June 11, 1929, dealt only with the appointment of a new executor. Section 124 of the Decedent Estate Law, which enacted the rule of equitable apportionment of the burden of estate taxes unless the will shall otherwise provide, became law in 1930, effective September 1, 1930 and applicable only to estates of persons dying on or after that date. The decedent’s death, as we have noted before, occurred in 1932. Section 124 is, therefore, applicable to the will of this decedent. The text of the will which the court is asked to construe was, however, written many years before section 124 was written.
As the court pointed out in Matter of Mills (272 App. Div. 229, 233, affd. 297 N. Y. 1012): “ The narrow issue is whether in referring to ‘ my estate ’ in that clause of the will, the testator intended his true or testamentary estate or the artificial taxable estate.” The intention of the testator in every case must be determined on the basis of the language used by him, interpreted in the light of the surrounding circumstances. (Matter of Mills, supra, p. 234; Matter of Halle, 270 App. Div. 619, 623.)
The will of this testator was written against a different background of law than existed at the time of his death. The courts have pointed out the difference between an estate tax then and now assessed by the Federal authorities and an inheritance tax then in force in New York. (See Farmers’ Loan & Trust Co. v. Winthrop, 238 N. Y. 488, 496.) Where the will was silent with respect to payment of taxes, the executor was bound to pay the entire Federal estate tax without right to reimbursement from the beneficiaries, but he was entitled to reimbursement where he had paid the New York transfer tax. (Id., p. 498.) When we read the text of this decedent’s will, we find that it refers to estate, transfer, inheritance and succession taxes and that it speaks of the taxes assessed against his estate, taxes assessed against the transfer or devolution of any part of his estate to his wife, and taxes imposed upon or assessed against his wife. Under the law in effect in 1924, the entire Federal estate tax would have been borne by the residuary estate even if he had said nothing at all in his will. His will makes clear his intention that the tax burden shall remain on the residue. Under the 1924 law, the New York tax would have been allocated against his wife to the extent that she received benefits under the will or outside the will. The decedent made no distinction between property passing under the will and property passing outside the will, but in broad language he shifted the burden of all such *368 taxes from his wife to the residuary estate. Viewed against the • background of existing law, there is revealed a clear intention to place the entire burden on the residue and to relieve his wife of any obligation to contribute to the taxes. The language used in the will, read in the light of the surrounding circumstances, constitutes a direction against apportionment under section 124 of the Decedent Estate Law.
The court, therefore, holds that none of the estate taxes attributable to the inclusion of the annuity are to be allocated against the widow.
Attorney’s fee. The surviving executor asks the court to fix his compensation for legal services rendered to the estate in the total sum of $12,500. The respondents contend that such an allowance would be grossly excessive.
The administration of this estate has continued for the past 28 years. The probate of the will was simple and was accomplished without difficulty or delay. The executor could recall no litigation at all involving the estate. The present accounting lists personal property valued at $104,886.61, interests in New York real property having a reported value of $65,500, and a small sum representing the proceeds of sale of realty in the State of Maine. There was no proceeding in this court between the tax proceeding and the present accounting. The New York estate tax proceeding was terminated by the final order dated October 28, 1935. In that proceeding, the executor’s legal fee was estimated at $5,000. After the termination of the tax proceedings, no legal services of any consequence were performed by the executor-attorney.
The attorney-executor speaks of the estate as a fund of $419,-207.88. He reaches that figure by including the value of all realty, the rents collected over the past 28 years, and the insurance annuity for the widow. The only items of service listed by the petitioner in his affidavit of services, which are somewhat outside the ordinary services in an estate of this size, were those relating to the decedent’s income tax liabilities for the years 1930 and 1931. The decedent’s physical disability had prevented the making of anything by tentative returns for those years, and after his death his executor had to assemble the necessary data and adjust the liabilities with the respective taxing authorities. The other items of legal service which the petitioner discusses in his affidavit were not substantial.
It would have been a service of some value to the beneficiaries to have caused a termination of this executorial administration a quarter of a century ago. Instead, the absolute legatees have been kept from the full enjoyment of their legacies. The con *369 tinuance of the administration did not cause any substantial additional legal services. The complications arise chiefly from the decedent’s interests in two parcels of real property. At the time of his death, the decedent owned a three-ninths interest; four ninths were owned by his niece, Stella K. Newborg, who is one of the executors under the decedent’s will; an undivided one-ninth interest was owned by each of the decedent’s sons. One of them was also an executor. We recall that the will gave each of these sons an outright gift of one third of the residuary estate. It is thus apparent that although the decedent had a minority interest in the two parcels, there could be no real difficulty as between the executors and the co-owners. Nor would the two sons be in any way prejudiced by allowing them full control over the additional one-ninth interest which passed to them under the will. The executors’ duties respecting the realty were even less burdensome than would initially appear because the properties were under long-term lease and the law firm of Kurzman and Frank represented the co-owners and supervised all of the interests. Even the income received by the executors appears to have come through that firm.
It thus appears that no substantial legal services were necessarily required over the years. When pressed on cross-examination to specify any single legal document prepared by him after the close of the tax proceedings, or any legal task performed by him, the attorney-executor could say only that he had examined papers on lease modifications prepared by the other firm, that he conferred with one attorney on the sale of the realty, and that he made annual reports to the beneficiaries. His affidavit of legal services shows no other legal services during this period except the preparation of the annual income tax returns.
The court fixes the total reasonable value of all legal services rendered to this estate by the attorney-executor in the sum of $5,500. From this sum must be deducted all amounts paid by the attorney-executor on account of his fee.
Objections, (a) The court will consider first the objections filed by Dr. Gilbert J. Rich, in which the ancillary executors of Stephen G. Rich and others join. The first objection is to the payment of $3,500 in 1935 and $500 in 1950 to the attorney-executor on account of his legal fee. The now deceased executor, Stephen G. Rich, had consented to the payment and had signed the first check, stating that he should be the one to sign it rather than the attorney-executor. He also signed the later check. The objection by his executors is overruled. As to the objectant, Dr. Rich, the attorney’s letter of February 18, 1952 makes reference to the two payments made to him on account of *370 Ms fee. A letter dated October 28, 1935 written by one of the attorneys who is related to the parties and who represents the executrix, states that he thinks ‘1 it only fair that a payment on account should be made to you at the present time and [that he] will recommend it to Gilbert, Stephen and my mother. ’ ’ The objectant, in his reply to the attorney’s letter of February 18, 1952, refers to the “ full and detailed statement ” which covered “ many facts that I already knew and some that I did not know about.” While there is no direct evidence that either the attorney for the executrix or the deceased executor actually discussed with the objectant the matter of making payment on account to the attorney-executor, the record indicates that either he acquiesced in the payment or that the attorney-executor was justified in believing that he had been advised and did not object. His objection is overruled. The other objectants in this group have no interest in the income from these two one-third shares except such as they derive through Stephen G. Rich, the deceased executor who made the payments.
The second objection is to the total compensation requested by the attorney-executor. The objection is sustained to the extent that the court has fixed the fee in the amount stated hereinabove. The third objection is withdrawn because of the withdrawal of any claim by the estate of the deceased executor to commissions or compensation. The fourth objection raises no issue, merely reserving a right to object to the supplemental account. The fifth objection is overruled on the basis of the judicial construction of the will made hereinabove. The sixth and seventh objections are addressed to allegations in the information schedule of the account and raise no triable issue. The eighth objection is a general objection, addressed principally to the motive of the attorney-executor in prolonging the administration of the estate and requires no ruling except in. connection with objections to allowance of commissions. The ninth objection is to. the further retention of the one-third share of Stephen G. Rich and it demands delivery to his personal representatives of all of his legacy.
At the hearing the accounting executor took the position that the will did not devise the property to the beneficiaries, but rather directed the executors “ to divide [the residue] into three equal parts or shares ”, and that until the executors made division, the beneficiaries took nothing. He also refers to the paragraph of the will wherein the decedent did “ authorize and empower ” his executors to “ make partition of any real property of which I may be seized at the time of my death in common with any other person or persons, and to execute and deliver *371 any and all deeds, conveyances, releases or other instruments requisite and necessary to carry such partition into effect with the same power to sell all the land taken upon such partition as land held by me in severalty, such land so partitioned and the proceeds thereof if sold to be held and disposed of in the same manner as if it had originally belonged to my estate ’ \ There is also a general power to sell all real estate. The accounting executor reads the will as containing a mandatory direction to divide the realty, and as lacking any grant of authority to make distribution in kind or to include any fractional interest in real property in the trust for the wife.
An executor takes no title to the real property of his testator, title vesting in the devisees subject to the necessities of administration. (3 American Law of Property, § 14.7; 33 C. J. S., Executors and Administrators, § 252, p. 1262.) Of course the will may, either expressly or by necessary implication, vest title in the executor (Anderson v. Wilson, 289 U. S. 20, 24), but when ‘ ‘ he takes an estate, it is as a devisee, and when an authority, as the donee of a power ” (Dominick v. Michael, 4 Sandf. 374, 409). A power of sale, unaccompanied by a valid trust over the proceeds, vests no title in the executor, but the lands descend to the heirs or pass to the devisees of the testator, subject to the execution of the power. (Morse v. Morse, 85 N. Y. 53, 58; Real Property Law, § 97.) A direction to the executors to divide the residue into equal parts does not operate to vest title in the executors, nor does it prevent the vesting of title in the absolute legatees. (Hershey v. Robson, 121 N. Y. S. 167, 169, 171.)
The ninth objection is, therefore, sustained. The contention of the accounting executor that he has the right to retain all of the shares under administration until he decides to make a division of the assets is overruled. An intermediate decree heretofore entered has directed payment of all of the personal property except such as might be necessary to meet claims and demands against the estate. The decree to be entered herein will direct payment of the balance of the legacies and all of the income allocable to the shares of the two residuary legatees. The court construes the will as vesting in each of the two residuary legatees an undivided one-third interest in all of*the estates in real property owned by the decedent at the time of his death.
The tenth objection is sustained. The attorney-executor reports as an unpaid administration expense the sum of $1,250 for accounting services to a firm of certified public accountants for preparing the account herein. There is nothing in the account that is at all unusual except the period of time that it covers. The compensation allowed to the attorney-executor is *372 intended to cover all of his legal services through the termination of this accounting proceeding, including the legal services necessary in the preparation of the account and the conduct of the proceeding. An executor is justified in charging an estate with the services of a certified public accountant only when it has shown that such services were necessary (Matter of Musil, 254 App. Div. 765; Matter of Harbeck, 81 Hun 26, affd. 145 N. Y. 648; Matter of Hopson, 213 App. Div. 395; Matter of Steinberg, 208 Misc. 135; Matter of Kramer, 70 N. Y. S. 2d 239). No reason was advanced to show the necessity for employing accountants in this case. The claim of the accounting party for exoneration of this expense and of the right to pay it from the estate assets is disallowed.
The eleventh objection is to the failure of the accounting executor to deliver income collected by him to the two residuary legatees from and after June 9, 1959. There is no proof in the record of any specific amounts due them, the objection being addressed to the payments of income to the widow without making equal payments to the absolute legatees. The supplemental account states that the objectants caused the firm of attorneys who managed the real property to cease payments to the executor of the income representing the two one-third interests of the residue. It is not clear, therefore, whether there was in fact an inequality of distribution, and if so, to what extent. The disposition of this objection will be reserved for the settlement of the decree, at which time the final figures may reveal whether or not there was inequality of distribution, and loss to the objectants.
The twelfth objection is to the retention of income amounting to $46,213.85. The record indicates that objectant Gilbert J. Rich had written the accounting executor in 1952 questioning the steady accumulation of income over the years. The accounting executor advised him, that the income was reserved to pay charges and expenses that might be allocable to income. In the present accounting the accounting party is asking ordinary income commissions of $4,554.43 and real estate management commissions of $4,558.23. It is difficult to understand how the accounting party could believe that a reserve of over $46,000 of income was necessary. However, it appears that all of the income had been invested. The objectants ask that the accounting party be directed to reconstitute the income account so as to establish proper income balances carried over from year to year ‘ ‘ in order that .a basis may be found for fixing the monetary loss to objectants in the form of loss of interest and earnings on said funds.” The objection was submitted without *373 extrinsic evidence to support it. It would appear from the account that there has been no loss of interest or income on the amounts retained but that all of them have been invested during the period of the account. The objection is, therefore, overruled.
The thirteenth objection is withdrawn. The fourteenth objection is to the allowance of commissions to the accounting executor on the ground (a) that the accounting party had intentionally lulled his coexecutors and the beneficiaries into the beliéf that the continuance of the administration was necessary in order that he might benefit individually and that he is accordingly guilty of a breach of trust resulting in the forefeiture of his rights to commissions; (b) that he is not, in any event, entitled to the management commissions in the sum of $4,558.23 because the executors did not manage the real property within the meaning of section 285 of the Surrogate’s Court Act; (c) that, in any event the executor is not entitled to principal commissions on the unsold real property listed in Schedule H of the supplemental account at a value of $57,000.
The court will reserve for determination at the time of the settlement of the decree the right of the executor to ordinary principal and income commissions. Subdivision (a), therefore, remains open. In respect of subdivision (b) it appears that in 1928 the decedent and his co-owners leased the realty for a period of 21 years, commencing May 1, 1929, with an option for renewal for a further term of 21 years. The lease was a net rent lease, under which the landlords were to receive the stipulated rents and the tenant was to pay all taxes, assessments or other charges against the property “ and such other sum or sums which, except for the execution and delivery of these presents would have been chargeable against said premises and payable by the Landlord.” The rents were collected from the tenant by the firm of attorneys which originally represented all of the co-owners. The executors had nothing to do but receive the decedent’s proportionate share when delivered by the firm of attorneys. The executor was asked to state any act of management performed by him during all of these years, and he was unable to state one. He never collected any rent from the tenant. There were certain modifications in the terms of the lease after the decedent’s death. The circumstances of these modifications are not revealed in the record.
The court holds that the present record does not indicate that the net rent lease made by the decedent required such services as to constitute management of the real property within the meaning of section 285 of the Surrogate’s Court Act. (Matter of Burrows, 3 N Y 2d 869; Matter of Smathers, 309 N. Y. 487.)
*374 The court further rules that the executor is not entitled to any commissions on the real property which remains unsold. Neither the granting of a power of sale, nor even the making of a direction to sell broad enough to constitute an equitable conversion, would provide a basis for claiming commissions on realty that is still unsold. (Matter of Salomon, 252 N. Y. 381, 384.) ‘ ‘ They performed no act in relation to it under the authority vested in them by the terms of the will, and title to the real property never vested in them.” (Id.)
The court will next consider the objections filed by Stella K. Newborg, individually and as one of the executors. The first objection is overruled. The objectant herself made the larger payment. The second objection has been disposed of by the fixation of the attorney’s fee. The third objection relates to her own claim to commissions and is reserved for determination upon the settlement of the decree. The fourth objection has been disposed of by the decision herein on the question of construction. The fifth objection is to the failure to list Joseph M. Rich in the petition. The fact is that the petition does mention him as a person interested. The court has not defined the extent of his interest at this time. The sixth objection requires no ruling in view of the court’s decision on the question. The seventh objection is sustained. The court has held that there was no equitable conversion of the real estate. It is not necessary to determine at this time the capital of the trust estate. Her objections to the supplemental account raise no issues beyond those raised in the other objections and the same ruling is made thereon.
The special guardian for infant contingent remaindermen has filed objections to the account. The first three paragraphs of his report relate to the questions of construction of the will. The objection in paragraph fourth is overruled, the infants having no interest in income, and there being no damage to principal. The objection in the fifth paragraph has been disposed of by the fixation of the attorney’s fee. The objection in the sixth paragraph requires no ruling in the absence of submission of proof. The objection in the seventh paragraph requires no ruling. The objection in paragraph eighth to the failure to list securities characterized as “Miscellaneous, valueless securities ” is sustained to the extent that the schedule shall be amended to list the securities. The objection in the ninth paragraph is overruled for the reasons stated on the construction of the will. The objection in the tenth paragraph is sustained. Of the objections stated in paragraph eleventh, objections (a) and (b) are sustained. The bequest of a savings bank account *375 is a specific bequest (Matter of Baker, 146 Misc. 437) and commissions are not allowable on specific bequests of personalty (Surrogate’s C't. Act, § 285, subd. 2). Objection (c) is overruled. The objection stated in paragraph twelfth is overruled for failure of proof. The objection in paragraph thirteenth is academic because of the withdrawal of any claim for commissions by the estate of Stephen Gr. Rich. Determination of the objection stated in paragraph fourteenth is reserved for determination at the time of the settlement of the decree.
Submit decree on notice construing the will and settling the account accordingly.