Estate of Sol Schildkraut, Deceased, Eugene Schildkraut and Lester Schildkraut, Executors v. Commissioner.
Estate of Schildkraut v. Commissioner
Docket No. 963-64.
United States Tax Court
T.C. Memo 1965-239; 1965 Tax Ct. Memo LEXIS 91; 24 T.C.M. (CCH) 1215; T.C.M. (RIA) 65239; August 31, 1965
*91 Decedent's will established a trust of $300,000 from which income to the extent of $12,000 annually was to be paid to his widow for life, and if income from the trust was insufficient to pay the widow $12,000 a year, to the extent of such insufficiency the amount was to be paid out of the trust principal. The will further provided that if the widow were required to pay Federal and State income taxes on the sum paid to her from the trust, these taxes should be paid for her from the principal of the trust, and that so long as the widow retained ownership of certain real property, all real estate taxes on such property were to be paid from the principal of the trust fund, such payment of real estate taxes to cease upon sale or transfer of the real property. The will provided for any income in excess of $12,000 a year and the remaining principal of the trust fund at the death of decedent's widow to be distributed to a charitable foundation. Held, decedent's estate is not entitled to a charitable deduction with respect to any amount of the $300,000 trust fund since petitioners have failed to show that there is an ascertainable amount of the trust corpus with respect to which the possibility *92 of invasion is so remote as to be negligible. Held, further, decedent's estate is not entitled to a marital deduction with respect to any portion of the $300,000 left in trust since petitioners have failed to show that decedent's widow had, with respect to the entire $300,000 left in trust or a specific portion thereof, a power of appointment by will or during life exercisable by her alone and in all events. Held, further, petitioners have not shown that respondent erred in disallowing a portion of executors' fees estimated by petitioners to be due with respect to real estate owned by decedent at the date of his death since under New York law executors' fees are generally not allowable with respect to unsold real estate since absent a specific provision in the will, the executor does not take title to the unsold real estate of his testator. *93 George C. Wildermuth, 138 Montague St., Brooklyn, N. Y., for the petitioners. John B. Murray, Jr., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in the estate tax liability of the estate of Sol Schildkraut in the amount of $116,991.65. One of the issues raised *94 in the petition was conceded by petitioners at the trial, leaving for our decision the following: (1) Whether the estate is entitled to a deduction under section 2055(a) of the Internal Revenue Code of 1954[1] of all or any portion of an amount of $300,000 which Sol Schildkraut's will directed be set aside in trust with income in excess of $12,000 and the remainder, after provisions for certain payments out of the principal of the trust, to go to a charitable foundation. (2) Whether the estate qualifies for the marital deduction under section 2056 with respect to any portion of the $300,000 trust established by the will of Sol Schildkraut. [2]
(3) Whether the estate is entitled to a deduction under section *95 2053 for executors' commissions of $10,640 on $266,000, the value of certain real property described in the estate tax return. Findings of Fact Some of the facts have been stipulated and are found accordingly. Sol Schildkraut (hereinafter referred to as decedent) died testate on September 24, 1959, a resident of the State of New York. His executors filed a Federal estate tax return on December 15, 1960, with the district director of internal revenue, Brooklyn, New York. Decedent was survived by his widow, Golda Perl Dickerson Schildkraut, who was born April 12, 1912, and was approximately 47 years of age on the date of decedent's death. Decedent executed his last will and testament on August 9, 1959, revoking all prior wills and codicils. This will was admitted to probate on December 8, 1959, in the Surrogate's Court, Queens County, New York. Under this will decedent's nephews, Eugene and Lester Schildkraut, were named as executors and as trustees of a trust in the amount of $300,000 created by paragraph 7 of the will. On December 8, 1959, the two executors named in the will qualified as such and were granted letters testamentary by the Surrogate's Court of Queens County, *96 New York. Article 7 of decedent's will provided as follows: Seventh: I direct my Executors to set aside in trust out of my estate the sum of Three hundred thousand ($300,000.00) Dollars. I give, devise and bequeath the same to the Trustees hereinafter named, In Trust, Nevertheless, to hold, manage, invest and re-invest the same, to collect the income, and out of the net income, and if the net income is insufficient then out of the principal, to pay to my wife, Golda Perl Dickerson Schildkraut, the sum of One thousand ($1,000.00) Dollars on the first day of each calendar month during her lifetime. Until the trust herein provided is established, I direct my Executors to pay to my wife, Golda Perl Dickerson Schildkraut, the sum of One thousand ($1,000.00) Dollars a month out of the income of my general estate. In the event, said Golda Perl Dickerson Schildkraut, is required to pay Federal and State Income Taxes on said sums paid to her from this trust, these Federal and State Income Taxes should be paid for her from the principal of the said trust. I further direct that during the period of time said Golda Perl Dickerson Schildkraut, retains ownership of the real property at 202 Indian *97 Road, Palm Beach, Florida, situated in the Town of Palm Beach, Palm Beach County, Florida, all real estate Taxes on said property to be paid from the principal of the trust fund. The payments of all real estate Taxes on the real property at 202 Indian Road, Palm Beach, Florida, situated in the Town of Palm Beach, Palm Beach County, Florida, are to cease upon sale or transfer of said real property by Golda Perl Dickerson Schildkraut. I further direct that any income in said trust in excess of the Twelve thousand ($12,000.00) Dollars per year required to be paid to said Golda Perl Dickerson Schildkraut be paid each year to The Schildkraut Foundation, Inc., 35 West 35th Street, New York City, New York, a charitable corporation established under the laws of the State of New York. Upon the death of my wife, Golda Perl Dickerson Schildkraut, the remaining principal of said trust fund and accumulated income remaining in the hands of the Trustees, I direct be distributed to The Schildkraut Foundation, Inc., to devote the said sums to the charitable objects and purposes of the said corporation. The Schildkraut Foundation, Inc., was, on the date of decedent's death and still is, a corporation *98 organized and authorized to operate exclusively for charitable purposes, and no part of its net earnings inures to the benefit of any preferred stockholder or individual, and no part of its activities is carrying on propaganda or otherwise attempting to influence legislation. This corporation received from respondent a tax-exempt status as a charity and appears on respondent's cumulative list of such charities. At the date of his death decedent held title to and was a record owner of two parcels of real estate, one located in Jamaica, New York, and the other in Palm Beach, Florida. The parcel of real estate located in Palm Beach, Florida was valued, for estate tax purposes, at $65,000 as of the date of decedent's death, and it was specifically devised and bequeathed to decedent's widow by the terms of his will. On the date of decedent's death the annual real estate taxes on this property were $1,115. The parcel of real estate owned by decedent at the date of his death which was located in Jamaica, New York, had a value of $266,000 as of the date of decedent's death. As of the date of decedent's death. As of the date of the trial of this case, this property had not been sold. *99 Under schedule N of the Federal estate tax return of decedent's estate a total sum of $406,040 was claimed as a charitable deduction. Of the amount so claimed $300,000 represented the amount which decedent's will provided should be set aside in the trust created in article 7 thereof. Under schedule M of the Federal estate tax return of decedent's estate, the sum of $103,365.47 was claimed as a marital deduction. This amount was composed of the $65,000 value placed on the Palm Beach, Florida real estate, cash left by the will to the widow, certain other property specifically left to the widow, and insurance, but did not include any portion of the $300,000 which article 7 of decedent's will provided should be set aside in trust. Under schedule J of the Federal estate tax return of decedent's estate, executors' commissions in the amount of $38,400 were claimed, based upon a computation which included in the total property of the estate on which commissions were to be computed the $266,000 value of the Jamaica real estate but did not include the real property in Palm Beach, Florida valued at $65,000. The value of decedent's gross estate at the date of his death was $994,505.83 and *100 the adjusted gross estate was $931,025.30. Respondent in his notice of deficiency disallowed $300,000 of the charitable deduction claimed in the estate tax return and $10,018.66 of the executors' commissions claimed with the explanations that "no part of the deduction of $300,000.00 claimed in the estate tax return as a bequest to charity * * * is allowable under Section 2055" or any other section of the Internal Revenue Code of 1954, and that "a deduction for executors' commissions is allowable in the total amount of $28,381.34 only." [3]
*101 Respondent made no change in the marital deduction claimed on the estate tax return of decedent's estate and no change in the charitable deductions claimed other than the $300,000 disallowed. Opinion In the petition in this case a $300,000 deduction for a charitable bequest under article 7 of decedent's will was claimed as it was in the estate tax return. However, on brief, petitioners claimed a charitable deduction in the amount of only $55,431.55 on the basis of this provision in decedent's will. This amount is computed in petitioners' brief on the basis of an original corpus of $300,000 with interest at a per annum rate of 3 1/2 percent with resultant invasion of trust corpus for the income payment of $12,000 to decedent's widow, invasion to pay income taxes at the 1959 Federal rate on the portion of the $12,000 payable to decedent's widow which is allocated as coming from income and an invasion to pay real estate taxes of $1,115 a year on the real property, using a life expectancy of decedent's widow of 26.11 years. The result of this computation shows a total invasion of principal of the trust over the period of 26.11 years of $175,613.59, leaving a remainder so computed *102 at the end of such period of $124,386.41. Petitioners multiplied this computed remainder of $124,386.41 by.44564, the factor for the remainder interest shown in respondent's regulations (Table 1, Section 20.2031-7(f), Estate and Gift Tax Regulations), when a life estate is left to a person 47 years of age. It is petitioners' position that respondent erred in not allowing the value of the remainder interest so computed as a charitable deduction in computing the estate tax due from decedent's estate. Both parties recognize that respondent's regulations interpreting section 2055(a) allowing deductions for charitable bequests specifically provide that where a trust is created transferring property for both a charitable and a private purpose, deduction may be taken "of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest." Section 20.2055-2(a), Estate and Gift Tax Regulations. A similar provision was in respondent's regulations under the Internal Revenue Code of 1939 and prior Revenue Acts *103 and has been specifically approved by the courts. Merchants National Bank of Boston, Executor, v. Commissioner, 320 U.S. 256 (1943), and Commissioner v. Sternberger's Estate, 348 U.S. 187 (1955). The question in this case, therefore, as has been the question in many other cases to come before this and other courts, is whether the "conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts" so that "the amount which will be diverted from the charity and the present value of the bequest become adequately measurable." Merchants National Bank of Boston, Executor, v. Commissioner, supra.Generally, the cases which have come before the courts have involved either the contention that the possibility of invasion of the corpus of the trust to any extent was so remote as to be negligible and therefore the entire corpus after reduction for the life estate of the life beneficiary was a charitable deduction or those in which the contention has been that the amount of invasion *104 was so definitely fixed by the terms of the will that there would be a mathematically computable remainder interest with respect to which the possibility of invasion was so remote as to be negligible. Ithaca Trust Co. v. United States, 279 U.S. 151 (1929); Merchants National Bank of Boston, Executor, v. Commissioner, supra; Estate of Charles H. James, 40 T.C. 494 (1963); Estate of Mary Cotton Wood, 39 T.C. 919 (1963); Estate of Jean S. Alexander, 25 T.C. 600 (1955); [4]Estate of Helen Stow Duker, 18 T.C. 887 (1952); [4]Estate of Eunice M. Greene, 11 T.C. 205 (1948); Moffett's Estate v. Commissioner, 269 F. 2d 738 (C.A. 4, 1959), affirming 31 T.C. 541 (1958); Brooks' Estate v. Commissioner, 250 F. 2d 937 (C.A. 3, 1958), affirming 27 T.C. 295 (1956); [4] and United States v. Dean, 224 F. 2d 26 (C.A. 1, 1955). See also summary of such cases in Appendix I of Kline v. United States, 202 F. Supp. 849 (N.D.W. Va., 1962), affirmed per curiam 313 F. 2d 633 (C.A. 4, 1963).
*105 The criteria as set forth in Merchants National Bank of Boston, Executor, v. Commissioner, supra, is that the amount available to the charity must be ascertainable by a "highly reliable" appraisal and that "rough guesses, approximations, or even the relatively accurate valuation on which the market place might be willing to act are not sufficient." In Henslee v. Union Planters Bank, 335 U.S. 595 (1949), the Supreme Court pointed to the necessity of a presently ascertainable value of the remainder interest at the date of the decedent's death in the following words: We do not overlook the unlikelihood that a woman of the mother's age and circumstances would abandon her customary frugality and squander her son's wealth. But, though there may have been little chance of that extravagance which would waste a part or consume the whole of the charitable interest, that chance remained. What common experience might regard as remote in the generality of cases may nonetheless be beyond the realm of precise prediction in the single instance. * * * Nor do we think it significant that the trust corpus was intact at the mother's death, for the test of present ascertainability *106 of the ultimate charitable interest is applied "at the death of the testator." In the instant case the remaining value computed by petitioner is based on a number of assumptions. Even if we accept the computation of trust income at 3 1/2 percent per annum, which under certain circumstances respondent provides by regulation as an acceptable criterion for estate tax computations, there still is no ascertainable amount of the trust corpus with respect to which the possibility of invasion is so remote as to be negligible. Petitioners' computation is premised on a life expectancy of the widow of 26.11 years which petitioners state is computed as follows: According to American Experience Table of Mortality, the decedent's surviving spouse has a life expectancy of 23.08 years (Petitioner's Exh. 16). Her life expectancy is 29.36 years according to the United States Life Table prepared by the Bureau of Census (See, Jones Legal Forms, Vol. 3, Sec. 60.1, p. 541). The Commissioners' Ordinary Standard Table is the approximate mean of the three tables. In Moffett's Estate v. Commissioner, supra, the life expectancy of the person who was to receive a payment from the corpus of *107 the trust based on actuarial tables was only 24.72 years or 20.18 years depending upon which table was used, but it was held that this fact did not make the possibility of her living for 30 years from age 50 and thus exhausting the trust corpus, so remote as to be negligible. A charitable deduction was not allowed for any portion of the trust remainder computed by use of actaurial tables. In that case, reliance was placed on United States v. Dean, supra, which involved a 1 in 11 or approximately 9 percent chance that the remainder of the trust corpus would not vest in the charity provided in the will to take the remainder interest. In the instant case if decedent's widow lived to age 80, she would live approximately 7 years longer than the life expectancy assigned to her in petitioners' computation, which following that computation through, would leave a remainder of the trust corpus of approximately $50,000. If decedent's widow lived to age 84, following petitioners' computation through, the trust corpus would be practically exhausted. We can not conclude on the basis of the record in this case that the possibility of decedent's widow living until she is 84 is negligible. *108 Henslee v. Union Planters Bank, supra.Furthermore, the income tax computation made by petitioners is on the assumption of no State income taxes with the explanation that the Florida constitution prohibits taxation of income. However, the record is totally devoid of any evidence that decedent's widow is a resident of Florida and certainly we are not justified in assuming that she is merely because she retains the Florida property devised to her. Even if it had been shown that petitioner was currently residing in Florida, there is always the possibility that she will not continue to do so. Certainly, on this record there is no justification for assuming that no State income taxes will be paid on behalf of the widow. As pointed out in Merchants National Bank of Boston, Executor, v. Commissioner, supra, "the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable." Here the residence of the widow is not shown. Neither is any showing made of the actual trust income. *109 Under these circumstances petitioners have totally failed to show that there is an ascertainable amount of the trust corpus with respect to which the possibility of invasion is so remote as to be negligible. We therefore conclude that petitioners are not entitled to any charitable deduction with respect to the $300,000 corpus of the trust created by decedent's will. Petitioners' argument with respect to the marital deduction under section 2056 is primarily to the effect that since the entire amount of the trust would go either to the widow or to the charity, if the estate is not entitled to a charitable deduction, it should be entitled to a marital deduction for all or a portion of the $300,000 left in trust. As appealing as this argument is from a general equitable standpoint, since it is clear under the will that the funds will either go for the use and benefit of the widow or be left to charity, the provisions of the Code do not justify a deduction on such basis. Section 2056(b)(5)[5] provides for inclusion in the marital deduction of property passing from the decedent, if his surviving *110 spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, with power in such surviving spouse to appoint the entire interest, or such specific portion, and with no power in any other person to appoint any part of the interest or such specific portion. *111 We need not consider the divergent views of the parties on the question of whether "such specific portion" must constitute a fraction or percentile share [6] since here there was no portion of the trust over which the surviving spouse had any unrestricted right of use or appointment. The only invasion of principal provided for in the trust instrument other than any portion of the $1,000 per month payment to the widow, for which the net income of the trust was insufficient, [7] was for payment of Federal and State income taxes on the sums paid to the surviving spouse from the trust and payment of real estate taxes on the Palm Beach, Florida, property so long as the surviving spouse did not sell or transfer that property. Under the clear terms of the trust the rights of invasion were conditional in that should there be no payment of income taxes or real estate taxes, either due to the death of the surviving spouse before sufficient amounts had been paid from the trust to require payment of income taxes or the property taxes on the Palm Beach property became due, or because of no income taxes being due because of the exemptions or deductions offsetting the surviving spouse's income or *112 the Florida real property being transferred prior to the due date of real estate taxes, there would be no invasion of the trust corpus for the beenfit of the widow. Such limitations on the right of use of any of the corpus do not give the surviving spouse a power of appointment over any portion of the corpus either during her lifetime or by will. *113 Even if the provisions of decedent's will could be interpreted as giving some unrestricted power of invasion to the surviving spouse during her lifetime without any power to devise, under New York law this would not be the equivalent of a power to appoint to herself. May's Estate v. Commissioner, 283 F. 2d 853 (C.A. 2, 1960), affirming 32 T.C. 386 (1959); and Estate of Francis F. Field, 40 T.C. 802, 809 (1963). For this reason under New York law, any interest which might have passed under decedent's will to his surviving spouse because of the power of invasion stated therein is a terminable interest and does not qualify for the marital deduction under section 2056(b)(5). Petitioner cites Nettz v. Phillips, 202 F. Supp. 270, 272 (S.D.Iowa, 1962), for the proposition that where a surviving spouse has the unrestricted right to dispose of the property during her lifetime without the power to devise, the marital deduction is allowable. On brief petitioner quotes from this case a portion which cites as standing for this proposition the cases of McGehee v. Commissioner, 260 F. 2d 818 (C.A. 5, 1958); Geyer v. Bookwalter, 193 F. Supp. 57 *114 (W.D. Mo., 1961); and Carlson v. Patterson, 190 F. Supp. 452 (N.D. Ala., 1961). We do not consider any of these cases to be in point here. The wills which were being construed in those cases were not governed by New York law. Irrespective of the correctness of the holding in each of those cases under the law of the State applicable to the will there involved, we are concerned here with the rights which passed to decedent's widow under New York law. As the Court stated in May's Estate v. Commissioner, supra, at p. 857: It may be appropriate to comment briefly on the contention of the petitioner here, * * * that the Court should not so construe this section as to make possible the achievement of different results depending upon the state in which the parties reside. It seems to us that this is merely an attempt to put the "cart before the horse." Section 812(e)(1)(F) makes it perfectly simple for any testator to make absolutely certain that his bequest will be considered as a marital deduction. All he has to do is to grant to the spouse "power * * * to appoint the entire interest, or [a] specific portion" in favor of herself or her estate, exercisable *115 in all events, and that he grant no such power to any other person to appoint to any person other than the spouse. A will which contains a bequest for life to the wife expressly granting these powers has the same effect in any state in which the will is probated. There is, thus, complete uniformity if the statute is followed. The only occasion in which a lack of uniformity arises is when a testator's personal representative seeks to have the court hold that something different from, or less than, the express requirements of the statute accomplish the same result. In such event the burden falls to the taxpayer to show that in his state the estate granted to the wife is, in law, indistinguishable from that which is set out in Section 812(e)(1)(F). In the instant case petitioners have totally failed to establish that the marital deduction is allowable with respect to any portion of the property left in trust under paragraph 7 of decedent's will. The final issue in this case is whether respondent properly disallowed $10,018.65 of the amount claimed by petitioners for a deduction for executors' commissions. This amount represents executors' commissions computed in the percentages provided *116 in section 285 of the New York Surrogate's Court Act with respect to real property owned by decedent at the date of his death, located in Jamaica, New York, which the parties agree is properly valued at $266,000. This property has not been sold. The petitioners have not shown that any executors' commissions have been actually paid or allowed by the Surrogate Court. Executors' commissions may be deducted for estate tax purposes before they have been paid or allowed by the Court having jurisdiction of the estate where they are based on a reasonable estimate of the fees allowable under the State laws. Arthur M. Lamport, et al., Executors, 28 B.T.A. 862, 867 (1933). The question therefore is whether petitioners have shown there exists a reasonable expectation that executors' commissions with respect to the Jamaica, New York, real estate will be paid. Estate of Alice K. Larkin, 13 T.C. 173 (1949). It is, of course, incumbent upon petitioners to show that there is such a reasonable expectation. Estate of Leo J. Dutcher, 34 T.C. 918, 927 (1960). The only *117 evidence in the record with respect to the Jamaica, New York real estate is that it has not been sold. Whether it is anticipated that it will be sold or, as respondent suggests may be the case, that it will be transferred to the trust, has not been shown. Petitioners rely entirely on the provisions of section 285 of the Surrogate's Court Act of New York, requiring the Surrogate to allow executors' commissions "For receiving and paying out all sums of money" at specific rates and further providing that: The value of any real or personal property * * * received, distributed or delivered, shall be considered as money in making computation of commissions. But this shall not apply in case of a specific legacy or devise * * * Petitioners point out that they have not claimed commissions based on the $65,000 value of the Palm Beach property which they recognize as a specific legacy or devise, but contend that they are entitled to such commissions with respect to the Jamaica, New York, real estate even though it has not been sold. As was pointed out by the Broome County Surrogate's Court in *118 In re Gates' Will, 159 N. Y. S. 2d 353, 355 (1957) while the literal words of section 285 of the Surrogate's Court Act of New York might suggest that executors' commissions would be allowed on real estate whether or not it is sold by the executor, this has not been the holding of the New York Courts. In that case, the Court relied on a decision by the Court of Appeals of New York in Matter of Salomon's Ex'rs, 252 N. Y. 381, 169 N.E. 616, 617 (1930), in which it was held that a provision in the will that for the distribution and settlement of the estate, real property should be deemed to be personal property did not justify departure from the rule that the basis of computation of executors' commissions does not include unsold real property. In In re Gates' Will, supra, the Court, in connection with its discussion of the case of Matter of Salomon's Ex'rs, supra, stated: The above quoted portion of section 285, S.C.A., was there quoted and applied by the Court of Appeals. This, at that time, was identical with what it is now. Careful search shows that no appellate case since 1930 has in any way modified the construction of the *119 statute unanimously adopted in the Salomon case. The basis for no allowance of executors' fees with respect to unsold real estate under the New York law appears to be that such property is not "received, distributed, or delivered" by the executor, since the executor does not take title to the real estate of his testator, title vesting in the devisees subject to the necessities of administration. In this connection the Surrogate's Court of New York County stated in In re Rich's Estate, 211 N.Y.S. 2d 68, 75 (1960), app. dism'd, 217 N.Y.S. 2d 493, reargument denied 218 N.Y.S. 2d 545, A direction to the executors to divide the residue into equal parts does not operate to vest title in the executors, nor does it prevent the vesting of title in the absolute legatees. Hershey v. Robson, Sup. 121 N.Y.S. 167, 169, 171. Since the only facts with respect to the Jamaica, New York, real estate which decedent owned at the date of his death which have been shown in the instant case are the value of that property at the date of decedent's death and that it had not been sold at the date of the trial of the instant case, petitioners have *120 failed to show that there is a reasonable expectation that executors' commissions with respect to this property will be paid. We sustain respondent's disallowance of the deductions claimed for executors' commissions with respect to the Jamaica real estate. Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. Respondent in his original brief does not discuss this issue and in his reply brief states that petitioners conceded this issue at the trial. Petitioners denied that the issue was conceded at the trial. Since there is no clear-cut concession and the issue is clearly raised by the pleadings, we have concluded that the issue is properly before the Court.↩
3. Apparently the only disagreement between the parties is as to the allowance of commissions with respect to the value of the Jamaica property and had it not been for disallowance of commissions with respect to this property respondent would have increased the allowable deduction for estimated commission because of increased values of certain assets reported in the estate tax return which petitioners do not contest. Therefore, it appears that the amount of deduction in issue for executors' commissions is the $10,640 stated by petitioners and not the $10,018.66 disallowed by respondent, the latter being a combination of increase in commissions allowable with respect to other properties, the value of which was increased in respondent's determination, and a disallowance of $10,640 of commissions with respect to the Jamaica real estate.↩
4. In each of these cases respondent had determined that an ascertainable remainder as of the date of decedent's death passed to the charity and the question was the propriety of respondent's method of computing the remainder.↩
5. Sec. 2056(b)(5). Life estate with power of appointment in surviving spouse. - In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse - (A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and (B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse. This paragraph shall apply only if such power in the surviving spouse, to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.↩
6. Petitioners rely for their contention that such is not required and that the regulations making such requirement are invalid on Gelb v. Commissioner, 298 F. 2d 544 (C.A. 2, 1962), modifying a Memorandum Opinion of this Court; and Northeastern Pennsylvania Nat. B. & T. Co. v. United States, 235 F. Supp. 941 (M.D. Penn., 1964). Respondent relies on Estate of Willard H. Cummings, 31 T.C. 986↩ (1959). 7. Petitioners do not contend that any portion of the corpus of the trust would come within a "specific portion" because of a right to invade for the $12,000 a year payment stating on brief that "It may not reasonably be assumed that such sum [the trust corpus] will earn more than $12,000.00 per annum."↩