202 F.Supp. 849 (1962)
Edwin F. KLINE, Executor of the Last Will and Testament of Fannie E. Kline, deceased, Plaintiff,
v.
UNITED STATES of America, Defendant.
Civ. A. No. 985-W.
United States District Court N. D. West Virginia, at Wheeling.
March 12, 1962.
Charles P. Mead, Wheeling, W. Va., for plaintiff.
Robert E. Maxwell, U. S. Atty., Fairmont, W. Va., Earl L. Huntington, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., James P. Garland, Lyle M. Turner, Attys., Dept. of Justice, Washington, D. C., on the brief), for defendant.
CHARLES F. PAUL, District Judge.
This is a suit for the refund of $84,162.47 paid July 29, 1959, by the plaintiff *850 on account of the assessment of a deficiency in Federal Estate Taxes. The deficiency resulted from the disallowance of a deduction claimed in the Estate Tax Return of some $285,000.00, as the value as of the time of death of a charitable remainder in a Trust established by the Will of plaintiff's decedent. There is no dispute about the amount and the fact that it resulted wholly from such disallowance. All statutory conditions precedent to the bringing of suit have been performed, and the jurisdictional facts exist.
The Government filed its motion for judgment on the pleadings. The plaintiff filed his motion for summary judgment, supported by a detailed affidavit reciting facts which he deemed pertinent. At the most recent hearing on the motions, the Government's attorneys stated that the Government had examined and investigated the factual statements contained in the affidavit, and that they had no counter-affidavit to file and did not contest the factual allegations, but that they did vigorously contest their relevancy and pertinency. Under the circumstances, and to admit the factual allegations insofar as they may be pertinent or relevant, I will treat the Government's motion as a motion for summary judgment, and the case as one upon final submission.
The testatrix, Fannie E. Kline, died November 27, 1957, aged 94. By her Will, she disposed of her tangible personal property, inconsequential in amount, to her son, Edwin F. Kline, then aged 74 and a bachelor.
By Item III of her Will, the testatrix established a Trust of the entire residue of her estate (the gross amount of which was approximately $395,000.00) for the principal benefit of her son for life, and, in Item V, disposed of the remainder interest in the Trust to qualified charities. The pertinent provisions of Item III are set forth in the margin.[1]
*851 The Government contends that the Will's provisions permit invasions of the corpus for the son's benefit during his lifetime, without limitation by any ascertainable standard, and that the value of the charitable remainder cannot be stated in definite terms of money. The Government bases its position upon the applicable statutes,[2] Treasury Regulations Sec. 20.2055-2, and a line of cases stemming from Merchants Nat. Bank of Boston v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35, and Henslee v. Union Planters National Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259.
The plaintiff contends that, properly construed, the Will limits invasion of corpus during the lifetime of the son and for his benefit to sums necessary for his proper maintenance and support and to meet emergencies such as illness, etc.; that the standard is sufficiently definite to permit inquiry into the circumstances as of the date of death and subsequent thereto; and that such inquiry will show that the possibility of invasion of corpus is so remote as to be negligible. The plaintiff relies upon the line of cases stemming from Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647.
The cases considered, in chart form, showing the crucial language of the testamentary instrument, pertinent findings with respect to the life beneficiary, and the prevailing party, with very brief comment, are collected and cited in Appendix I hereto.
If I could find, from a proper construction of the Will, that the authorized invasions of corpus were limited as contended for by plaintiff, I would have no hesitancy in holding that the possibilities of diminution of the values of the charitable remainders by invasions of corpus for the benefit of the life beneficiary are remote, and that it is as certain as human affairs can be made certain that charity will receive the entire corpus of the estate. I would base such a conclusion upon the following factual findings:
(1) At 74, Edwin F. Kline's life expectancy was 7.23 years; he is a retired lawyer and, relative to his income from his own investments, his living habits and expenses were modest.
(2) At the time of his mother's death, Kline owned investment real estate from which his net annual income was $5,600.00; shares of stock, principally in national corporations whose securities are listed on the New York Stock Exchange, aggregating in value in excess of $400,000.00; life insurance with cash value in excess of $4,000.00; U. S. Treasury Bonds, Series E, in the face amount of $150,000.00; and bank accounts aggregating in excess of $13,000.00.
(3) For the years 1955-56-57 his personal expenditures were less than 25% of his average adjusted gross income from investments, and in each of those years, as in prior years, he added to his capital investments from savings.
(4) Prior to his mother's death, Kline lived with and took care of her in their relatively modest home, with singular devotion. He had no dependents, and his sole next of kin were three first cousins and the children of deceased first cousins on his paternal side, and children of first cousins on his maternal side, to none of whom he ever made any inter vivos gifts.
(5) For the years prior to her death, Mrs. Kline's contributions to the joint *852 living expenses were less than one-third of her annual separate income.
(6) Edwin F. Kline's principal interests were intellectual and cultural, and his business activities limited to the careful and studied investment of his own and his mother's funds.
If then, withdrawals from the trust estate established by his mother's Will are fairly limited to the son's needs and prospective needs, based upon his established mode and standard of living, it would seem apparent that the trustees would have a hard time justifying payments from income above the minima provided by the Will, to say nothing of invasions of corpus.
However, I am forced to conclude, from the language of the Will, that the authority of the trustees to make distributions to the life beneficiary with respect to either income or corpus is not limited by the life beneficiary's needs, determined with reference to his prior standard of living. As a result, I am also forced to conclude, under the applicable decisions, that the gifts-over to charities are not sufficiently certain in monetary value to qualify as charitable deductions for Estate Tax purposes.
The words "to the same generous extent that I, if living, could do * * *", modifying the trust obligations for maintenance and support, speak of the future, not the past. They comport change, not simply a continuance of an established mode of living and the following of a custom of the testatrix to contribute toward it. These words amount to a direction to the trustees to apply a subjective test of desire, not an objective test of need. I realize that this Will does not require the distribution of all of the income. It does require the payment of the annuity, the upkeep of the home property, and the exoneration of the income tax impact on trust payments to the beneficiaryand it requires these whether the income is sufficient or not. If I could construe this Will to restrict the application of the quoted words to the exercise of the trustees' discretion in the distribution of excess income, the words would lose their effect upon this question. I am not able so to construe this Will. The provisions with respect to distributions from income and corpus are inextricably mingled, and the injunction to the trustees to exercise generosity, in their consideration of what constitutes proper maintenance and support, applies equally to both. It might prove interesting to try to calculate the probability against the chance that this man of means, culture and sobriety, would, in the future, substantially change his standard of living; but such a speculation would be fruitless. The possibility of change exists, and, under this Will, if it occurs, the trustees are required to make distributions to meet it.
The testatrix expressly recognized the possibility that the beneficiary might want to forsake the modest home and acquire another. While any such newly acquired home would remain part of the corpus of the estate, it would, if more elaborate, require greater expenditures for upkeep, taxes and insurance, and the word "suitable", in the light of this man's means, does not sufficiently qualify the character of the substituted home to limit the cost and expense.
The specific direction and authorization to invade corpus as "circumstances may require" to defray the expenses of illness, and "also in other unforeseen circumstances", coupled with the fact that the co-trustee has discretion, unfettered by court restrictions, to decide the extent of invasion of corpus, strongly militates in favor of a holding that no ascertainable part of this corpus is immune from invasion. DeCastro's Estate, 2 Cir., 155 F.2d 254 and Commerce Trust Company v. United States, W.D.Mo., 167 F.Supp. 643 are particularly pertinent on this point.
The final paragraph of the portions of Item III of the Will quoted in note 1. does not detract in any way from the unfettered discretion of the trustees. It *853 simply limits the exercise of that discretion to the co-trustee, who is the attorney for the estate. If he should fail to qualify and act, his place would be taken by the nominee of the life beneficiary. I find no limiting effect in the words "as circumstances may require", since the scope of the circumstances is so broadly painted in the language of the Will as a whole. Indeed, with all of the language protecting the trustees in their discretionary powers, it is difficult to see how the remainder charities could successfully surcharge the trustees' accounts for any distribution they might possibly make.
The defendant's motion for summary judgment is sustained, and judgment of dismissal with prejudice, at the costs of the plaintiff, may be entered accordingly.

APPENDIX I

 SUPREME COURT CASES
 STANDARD FOR INVASION, LIFE
 CASE CRUCIAL LANGUAGE BFCY HOLDING & COMMENT
------------------------------------------------------------------------------------------------------------
Ithaca Trust Co. v. any sum "necessary to suitably widow for taxpayer. "Standard
United States, 279 maintain her in as much was fixed in fact and capable
U.S. 151, 49 S.Ct. comfort as she now enjoys". of being stated in
291, 73 L.Ed. 647 definite terms of money,"
(1929); and trust income sufficient.
Merchants National "comfort, support, maintenance, widow, 67, of for government. No fixed
Bank of Boston and/or happiness"; liberal means standard because of "happiness"
v. C. I. R., 320 U.S. discretion granted to language and liberal
256, 64 S.Ct. 108, provide for wife, whose interest instruction to trustee.
88 L.Ed. 35 is to come first.
(1943);
Henslee v. Union $750 a month from trust income, mother, 85, of for government. Remote
Planters National to be used as beneficiary frugal habits, possibility of wasting corpus,
Bank & Trust Co., "sees fit"; invasion of corpus and means but still possibility.
335 U.S. 595, 69 S. for her "pleasure, comfort,
Ct. 290, 93 L.Ed. and welfare". First object of
259 (1949). trustees to provide for beneficiary
 as "she may desire".

*854
 CASES FOR AND IN THE FOURTH CIRCUIT
 STANDARD FOR INVASION,
 CASE CRUCIAL LANGUAGE LIFE BFCY HOLDING & COMMENT
-----------------------------------------------------------------------------------------------------------
Helvering v. Union "additional sums for the proper widower, 76 for government. However,
Trust Co., 125 F.2d care and comfort of the husband, another ground controls
401 (1942), cert. should illness, accident the decision.
denied 316 U.S. or misfortune so require:"
696, 62 S.Ct. 1292,
86 L.Ed. 1766;
C. I. R. v. Robertson's "if in the judgment of the said sister, 76, for taxpayer. Looks to actualities,
Estate, 141 F. trustee, the best interests of wife of clergyman holds no possibility
2d 855 (1944); my sister should so require." and of of charity not getting
 means all. Validity of case
 somewhat questionable because
 rule of Dobson v.
 C. I. R., 320 U.S. 489, 64
 S.Ct. 239, 88 L.Ed. 248;
 321 U.S. 231, 64 S.Ct. 495,
 88 L.Ed. 691, overruled by
 statute.
Bowers v. South to pay, if trust income be insufficient, 2 sisters, for taxpayer. Actualities,
Carolina National monthly sums to sisters 1 cousin, including post-death evidence
Bank of Greenville, and for their medical expenses elderly (a probate order),
4 Cir., 228 F.2d 4 and for upkeep of looked to.
(1955); house.
Mercantile-Safe for "comfortable support" and elderly Ithaca Trust controls, for
Deposit, etc. v. "in event of accident, illness, sister, of taxpayer. Relies heavily
United States, 141 misfortune, or other emergency." own means on CCA 4 decisions, looks
F.Supp. 546 (D.C. Beneficiary of primary to actualities and decides
Md.1956). concern, but trustee no invasion likely.
 bound to consider her entire
 resources before invading.

*855
 CASES FROM OTHER CIRCUITS
 STANDARD FOR INVASION,
 CASE CRUCIAL LANGUAGE LIFE BFCY HOLDING & COMMENT
-----------------------------------------------------------------------------------------------------------
Hartford - Connecticut for what trustee deems "necessary widow for taxpayer. Under Connecticut
Trust Co. v. or advisable for her law, words tantamount
Eaton, 36 F.2d 710 comfortable maintenance and to "station in
(2nd Cir., 1929); support." life"; hence Ithaca Trust
 controls.
Gammons v. Hassett, "so much as my wife may need widow, 93, of for government. "Extremely
121 F.2d 229 or desire" own means remote" possibility
(1st Cir., 1941) of invasion, but "desire"
cert. denied 314 U. imports subjectivity.
S. 673, 62 S.Ct.
136, 86 L.Ed. 539;
C. I. R. v. Bank of $250 a month from trust property sister, 79, for taxpayer. Majority
America, 133 F.2d and if required "by reason $25,000 net says "look at actualities."
753 (9th Cir., of accident, illness, or other worth Dissent.
1943); unusual circumstances,
 more. Beneficiary uppermost
 in mind.
C. I. R. v. Wells "sickness, accident, want or niece, 54, for taxpayer. Follows
Fargo Bank & other emergency"; $54,000 net Bank of America, above,
Union Trust Co., worth says then-recent Merchants
145 F.2d 130 (9th Bank distinguishable.
Cir., 1944);
Wells Fargo Bank "in event of sickness, accident, widow, 60, for taxpayer. Tax Court
& Union Trust Co. want, or other emergency" thrifty, reversed because it considered
v. C. I. R., 145 F.2d healthly, own post-death events,
132 (9th Cir., means (invasion).
1944);

*856
 STANDARD FOR INVASION,
 CASE CRUCIAL LANGUAGE LIFE BFCY HOLDING & COMMENT
-------------------------------------------------------------------------------------------------------
DeCastro's Estate if income not enough, "due to widow, 75, for government. Case
v. C. I. R., 155 F.2d illness, accident or other unforeseen frugal governed by Supreme
254 (2nd Cir., emergency"; no one Court's decision in Merchants
1946) cert. denied to call in question propriety Bank.
329 U.S. 727, 67 S. of wife's invasion.
Ct. 82, 91 L.Ed.
630.
Newton Trust Co. "use and benefit". widow for government. "Use and
v. C. I. R., 160 F.2d benefit" furnishes no ascertainable
175 (1st Cir., standard;
1947); Massachusetts cases don't
 confine standard. Excellent
 analysis and review.
National Bank of "maintain her in our home or widow, 82 for government. Amount
Commerce of San a location of her choosing, provide of corpus that will remain
Antonio v. Scofield, with necessities and comforts a matter of conjecture,
169 F.2d 145 (5th in life to which she is accustomed"; not accurately calculable;
Cir., 1948) cert. trustee to provide strong dissent.
denied 335 U.S. "liberally".
907, 69 S.Ct. 410,
93 L.Ed. 441;
Berry v. Kuhl, 174 "accident, illness, or other widow, then for taxpayer. Uncertainty
F.2d 565 (7th Cir. cause" . . . "treatment, daughter, of of "other causes" cured
1949); support, maintenance". means, frugal by later words referable
 to accustomed standard
 of living. Minton, J.

*857
 STANDARD FOR INVASION,
 CASE CRUCIAL LANGUAGE LIFE BFCY HOLDING & COMMENT
--------------------------------------------------------------------------------------------------------
Lincoln Rochester "necessary for her proper nurse, 72, for taxpayer. Standard
Trust Co. v. C. I. R, care, support, and maintenance". small means set up is referable to her
181 F.2d 424 (2nd accustomed mode. Clark,
Cir., 1950); J.
Blodget v. Delaney, "for her comfort and welfare". sister, 84 for taxpayer. Relying on
201 F.2d 589 (1st blind Massachusetts law, Ithaca
Cir., 1953). Trust held controlling.
Lincoln Rochester "unusual demands, emergencies" widow for taxpayer. Medina, J.,
Trust Co. v. McGowan, . . . "from sickness, considers issue of post-death
217 F.2d accident or failure of investments". evidence; decides
287 (2nd Cir., trustee's discretion adequately
1954). bound. Swan dissents.
Third National if trustee in "its opinion shall mother, 69, for government. "Deem
Bank and Trust deem wise". frugal wise" furnishes no standard.
Co. of Springfield
v. United States,
228 F.2d 772 (1st
Cir., 1956);
Seubert v. Shaughnessy, "for any purpose which may sister, 73, for government. Clark, J.
233 F.2d add to her comfort or convenience" maiden, frugal, looks at nothing beyond
134 (2nd Cir., Beneficiary filed an affidavit of own the will; "add" the crucial
1956); to effect that she had means word.
 no intention of invading.

*858
 DISTRICT COURTS
 STANDARD FOR INVASION
 CASE CRUCIAL LANGUAGE LIFE BFCY HOLDING & COMMENT
------------------------------------------------------------------------------------------------------
In re Bartlett's Estate, "best interests" during "illness servant, 71 for government. "Best
153 F.Supp. or emergency of any limited interests" is as subjective
674 (E.D.Pa. kind." means, limited and incapable of ascertainment
1957); demands as "happiness"
 and "pleasure" (see Supreme
 Court decisions).
Commerce Trust "illness, injury, or any circumstances daughter, 65 for government. Missouri
Company v. United of emergency affecting and healthy, courts interpret "welfare"
States, 167 F.Supp. her welfare or health". with income broadly; standard
643 (W.D.Mo. in excess of not referable to "accustomed
1958). needs mode"; invasion
 conceivable.

NOTES
[1] "ITEM III. All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and nature, and wheresoever situate, including any property I might acquire hereafter, I hereby give, devise and bequeath unto Edwin F. Kline, (sometime herein called the `beneficiary') and Charles P. Mead, (sometimes herein called the `co-trustee') as trustees, in trust for the following purpose that is to say: To provide proper maintenance and support for said Edwin F. Kline from the time of my death for and during the term of his natural life, to the same generous extent that I, if living, could do, but at least at the minimum rate of Four Hundred Dollars ($400.00) per month; also as part of the trust, said Edwin F. Kline shall have the use of my residence, rent free, said trustees to provide proper upkeep and maintenance, and to pay the taxes and insurance thereon; also said trustees shall pay such income taxes as shall yearly be chargeable to said Edwin F. Kline on the amount of the annual sum devoted and applied to his maintenance and support hereunder. If said Edwin F. Kline should ever prefer other living quarters, said property may be sold like other trust property hereunder, and in such case, said trustees shall provide other suitable living quarters, wherever said Edwin F. Kline shall select in Wheeling or elsewhere. During the executor's administration of my estate, and until the trust hereunder shall have been set up and become operative, said executor shall provide for the proper care, support and maintenance of said beneficiary and of the upkeep of my residence in the same manner and under the same requirements as if said trust were in operation in the hands of said trustees.

"In the administration of this trust, it may be that at times only part of the income will be consumed, in which case said trustees, if they desire, may, in their absolute discretion, invest surplus accumulated income; and it may be that at times all income, including such accumulations, whether invested or not, may have to be consumed, in which event said trustees shall consume all such income and accumulations, and said trustees are further hereby directed and authorized to invade the corpus of this trust as circumstances may require, particularly may this be required in case of illness of the beneficiary requiring medical, surgical, hospital and nursing care, and also in other unforeseen circumstances. The said trustees are hereby authorized and directed to do all things necessary and incidental to their broad powers herein without making application for leave, authority, or directions to any court.
"As to the amount of income to be consumed hereunder other than the minimum fixed above, and the extent to which a greater amount shall be consumed and the corpus invaded, the co-trustee shall from time to time determine as circumstances shall require."
[2] Internal Revenue Code of 1954:

Sec. 2055 (26 U.S.C. 1958 ed., Sec. 2055)
Sec. 7482 (26 U.S.C. 1958 ed., Sec. 7482)