ESTATE OF ELIZABETH ANNIS HUTCHINSON, CHARLES H. McCONNELL, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1112–67. Filed February 27, 1969.

*J. R. Austin* and *Marvin F. Peterson*, for the petitioner.
*Ronald M. Frykberg*, for the respondent.

IRWIN, *Judge:* Respondent determined an estate tax deficiency of $41,515.57.

The sole issue is the deductibility of a charitable bequest of the remainder interests in several family trusts which the decedent set up by will.

Our ultimate question is whether there was a bequest to charity reasonably ascertainable in amount and deductible from the gross estate under section 2055(a)(1), I.R.C. 1954.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner is the Estate of Elizabeth Annis Hutchinson, Charles H. McConnell, executor. Decedent died a resident of Des Moines, Iowa, on August 13, 1963. An estate tax return was filed with the district director of internal revenue at Des Moines by the executor on November 13, 1964, showing an estate tax due of $530,320.02 which was paid at that time.

Decedent left a will dated October 21, 1961, which was admitted to probate August 26, 1963, and a codicil to the will dated August 12, 1963. After making a number of specific bequests, decedent directed, in Item XXIV of her will, that the residue of her estate be divided into four equal trusts, A, B, C, and D, for the benefit of her son and daughter and other relatives with remainders over to the Board of Regents of the State of Iowa. Following is a list of such beneficiaries living at the time of decedent's death showing their relationships to decedent and dates of birth:

| | Relationship to decedent | Date of birth |
| --- | --- | --- |
| Charles Robert Hutchinson | Son | 9/17/1929 |
| Patty Messer Hutchinson | Daughter-in-law | 7/31/1931 |
| Margery Hutchinson Severence | Daughter | 9/ 2/1930 |
| Charles Robert Hutchinson II | Grandson | 1/15/1960 |
| John Waldon Severence II | Grandson | 8/19/1955 |
| Thomas Arthur Severence | Grandson | 8/15/1956 |
| Margery Annis McConnell | Sister | 3/ 2/1905 |
| Charles H. McConnell | Brother-in-law | 5/31/1904 |
| Donald W. Annis | Brother | 7/31/1894 |
| Albert David Annis | Brother | 9/24/1902 |
| Elsie Matheny Annis | Sister-in-law | 10/15/1910 |
| Suzanne McConnell Schreiber | Niece | 3/ 7/1933 |
| Charles Allen Schreiber | Husband of niece, Suzanne McConnell Schreiber. | 2/24/1931 |
| Charles James McConnell | Nephew | 6/27/1936 |
| Jeffrey Allan Schreiber | Grandnephew | 2/27/1956 |
| Catherine Lynn Schreiber | Grandneice | 11/ 6/1958 |

It is noted that the ages of the beneficiaries ranged from 3 years to 69 years on the date of decedent's death.

Following are the material portions of decedent's will, including any modifications made by the codicil:

ITEM XXIV

I give, devise and bequeath the residue of my estate to Charles H. McConnell, In Trust, for the uses and purposes, and upon the terms and conditions hereinafter set forth:

Section 1.

The trust period shall commence upon the transfer of the property to the Trustee, and shall continue during the lives of my son, Charles Robert Hutchinson; my daughter, Margery Hutchinson Severence; my grandsons, Thomas Arthur Severence, John Waldon Severence II and Charles Robert Hutchinson II; my sister, Margery Annis McConnell; my brothers, Donald W. Annis and Albert David Annis; my brother-in-law, Charles H. McConnell; my sister-in-law, Elsie Matheny Annis; my niece, Suzanne McConnell Schreiber; my nephew, Charles James McConnell; husband of my niece, Charles Allan Schreiber; son of my niece, Jeffrey Allan Schreiber; and daughter of my niece, Catherine Lynn Schreiber; and the survivor of them, and for twenty-one (21) years thereafter, unless sooner terminated as hereinafter provided.

Section 2.

The trust property shall be divided in kind into four equal shares which shall be held and administered as the Elizabeth Hutchinson Trust "A", which shall be for the primary benefit of my daughter, Margery Hutchinson Severence; the Elizabeth Hutchinson Trust "B", which shall be for the primary benefit of my son, Charles Robert Hutchinson; the Elizabeth Hutchinson Trust "C", which shall be for the primary benefit of my brother-in-law, Charles H. McConnell, my sister, Margery Annis McConnell and my niece, Suzanne McConnell Schreiber; and the Elizabeth Hutchinson Trust "D", which shall be for the purpose of providing educational benefits for members of my family and their descendants; but for convenience sometimes referred to herein as Trust "A", Trust "B", Trust "C" and Trust "D", respectively.

Section 3.

In the administration of my husband's estate and the management of the trusts created by his will, I have attempted to achieve the maximum income and growth commensurate with preservation of the principal, and I am deeply satisfied that by managing my own property in the same way, I have been able to make material provisions for my children during my lifetime and yet leave a substantial estate. I have given much time and thought to this Will and especially to the trusts which will represent the bulk of my estate, and in order to insure to the members of my family the advantages I have attempted to provide for them, I have decided to give my Trustee considerable discretion in the matter of adjusting benefits to their needs and deserts. Accordingly, I hereby grant to my Trustee the following special powers and discretions in the administration of Trusts "A", "B" and "C", which shall be in addition to other powers given him by this Will.

(a) In the event of substantial changes in the cost of living, the Trustee shall be authorized to adjust all amounts specified herein for minimum annual distributions, every fifth year, commencing with the sixth full calendar year of the trusts, in proportion to changes in the cost of living as indicated by the "Consumers Price Index for Moderate Income Families in Large Cities, New Series (All Items) Published by the Bureau of Labor Statistics, U.S. Department of Labor (1947–1949=100)", or a comparable and equally reliable index; provided that such adjustments shall not reduce said distributions below the amounts specified herein; and provided, further, that such adjustments may be "rounded" to the nearest multiple of five ($5) Dollars.

(b) In the event Margery Hutchinson Severence, Charles Robert Hutchinson, Suzanne McConnell Schreiber, Margery Annis McConnell or Charles H. McCon-

nell, while receiving income from one of the trusts, shall suffer some extreme financial hardship beyond his reasonable control, the Trustee shall be authorized to distribute to him in any calendar year out of the corpus of such trust, a maximum of one hundred (100%) percent of one of his minimum quarterly distributions for such year. [Elsie Matheny Annis was added to this list by the codicil to decedent's will.]

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

Section 4.

The following provisions shall apply to all distributions of net income from Trusts "A", "B" and "C".

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(f) The Trustee shall make all quarterly and annual distributions out of net income to the extent thereof, and if the aggregate of the minimum distributions required from any trust for any year exceeds the net income of such trust for that year, the excess shall be charged against the corpus of such trust.

Section 5.

Distributions from the Elizabeth Hutchinson Trust "A", which is created for the primary benefit of my daughter, Margery Hutchinson Severence, shall be made, as follows :

(a) During my said daughter's lifetime, all of the net income after any distributions required under paragraph (b), but not less than Two Thousand Four Hundred ($2,400) Dollars if such distributions are required, and not less than Four Thousand Eight Hundred ($4,800) Dollars if such distributions are not required, shall be distributed to her.

(b) During the lifetime of my sister-in-law, Elsie Matheny Annis, but only so long as she remains unmarried, the sum of One Thousand Two Hundred ($1,200) Dollars per year shall be distributed to her; and during the lifetime of my brother, Dr. Albert David Annis, the sum of Two Thousand ($2,000) Dollars shall be distributed to him; provided, that if my daughter, Margery Hutchinson Severence, shall be widowed, divorced or legally separated, then in any such event, the Trustee shall distribute to my said sister-in-law, if she is then living and remains unmarried, out of corpus, the sum of Three Thousand ($3,000) Dollars; and shall distribute to my said brother, if he is then living, out of corpus, the sum of Three Thousand ($3,000) Dollars; and thereafter no distributions shall be made under this paragraph (b).

(c) After the death of my said daughter, all of the net income after any distributions required under paragraph (b) shall be distributed in the following order, that is to say, distributions shall be made under paragraph (2) only if such net income cannot be distributed as provided in paragraph (1), and distributions shall be made under paragraph (3) only if such net income cannot be distributed as provided in paragraph (2).

(1) To the daughters of Margery Hutchinson Severence in equal portions or to the survivor, provided that the portion of each such daughter shall be not less than One Thousand Two Hundred ($1,200) Dollars.

(2) To Charles Robert Hutchinson.

(3) To the children of Charles Robert Hutchinson in equal portions or to the survivor.

(d) Upon the death of the last surviving beneficiary who, if living, would be entitled to income from the Elizabeth Hutchinson Trust "A", the corpus and any undistributed income of said trust shall be transferred to and become a part of the corpus of the Elizabeth Hutchinson Trust "D", created under this Will,

Section 6.

Distributions from the Elizabeth Hutchinson Trust "B", which is created for the primary benefit of my son, Charles Robert Hutchinson, shall be made, as follows:

(a) During my said son's lifetime, all of the net income after any distributions required under paragraph (b), but not less than Four Thousand Eight Hundred ($4,800) Dollars, shall be distributed to him.

(b) During the lifetime of my brother, Dr. Albert David Annis, the sum of One Thousand ($1,000) Dollars per year shall be distributed to him; and during the lifetime of my sister-in-law, Elsie Matheny Annis, but only so long as she remains unmarried, the sum of Six Hundred ($600) Dollars per year shall be distributed to her.

(c) After the death of my said son, if he is survived by a wife who was living with him at the time of his death, the sum of Two Thousand Four Hundred ($2,400) Dollars per year shall be distributed to her during her lifetime, but only so long as she remains unmarried.

(d) [Substituted from the codicil.] After the death of my said son, all of the net income after any distributions required under paragraphs (b) and (c) shall be distributed in the following order, that is to say, distributions shall be made under paragraphs (2), (3) and (4) only if such distributions cannot be made under paragraphs (1), (2) and (3), respectively.

(1) To the children of my said son in equal portions or to the survivor, provided that the portion of each such child shall be not less than Two Thousand Four Hundred ($2,400) Dollars.

(2) To the grandchildren of my said son in equal portions or to the survivor.

(3) To Marjorie Hutchinson Severence.

(4) To the daughters of Marjorie Hutchinson Severence in equal portions or to the survivor.

(e) Upon the death of the last surviving beneficiary who, if living, would be entitled to income under the Elizabeth Hutchinson Trust "B", the corpus and any undistributed income of said trust shall be transferred to and become a part of the corpus of the Elizabeth Hutchinson Trust "D", created under this Will.

Section 7.

The Corpus of the Elizabeth Hutchinson Trust "C" shall be divided into three equal shares, for the primary benefit respectively of my brother-in-law, Charles H. McConnell, my sister, Margery Annis McConnell, and my niece, Suzanne McConnell Schreiber, and distributions therefrom shall be made, as follows:

(a) From the share created for the primary benefit of my brother-in-law, Charles H. McConnell, distributions shall be made, as follows:

(1) During the lifetime of my brother-in-law, Charles H. McConnell, all of the net income, but not less than Two Thousand Four Hundred ($2,400) Dollars, shall be distributed to him.

(2) After the death of my said brother-in-law, all of the net income shall be distributed in the following order, that is to say, distributions shall be made under paragraphs (ii) or (iii) only if distributions cannot be made under paragraphs (i) or (ii), respectively:

(i) To my sister, Margery Annis McConnell, not less than Two Thousand Four Hundred ($2,400) Dollars.

(ii) To my niece, Suzanne McConnell Schreiber, not less than One Thousand Two Hundred ($1,200) Dollars.

(iii) To the children of Suzanne McConnell Schreiber born after 1955, in equal portions or to the survivor.

(3) Upon the death of the survivor of Charles H. McConnell, Margery Annis McConnell, Suzanne McConnell Schreiber and the children of Suzanne McConnell Schreiber born after 1955, the remaining balance of said share shall be transferred to and become a part of the Elizabeth Hutchinson Trust "D", created under this Will.

(b) From the share created for the primary benefit of my sister, Margery Annis McConnell, distributions shall be made, as follows:

(1) During the lifetime of my sister, Margery Annis McConnell, all of the net income, but not less than Two Thousand Four Hundred ($2,400) Dollars, shall be distributed to her.

(2) After the death of my said sister, all of the net income shall be distributed in the following order, that is to say, distributions shall be made under paragraphs (ii), (iii) and (iv) only if distributions cannot be made under paragraphs (i), (ii) and (iii), respectively.

(i) To my children, Charles Robert Hutchinson and Margery Hutchinson Severence, in equal portions or to the survivor.

(ii) To the children of Charles Robert Hutchinson and the daughters of Margery Hutchinson Severence, in equal portions, or to the survivor.

(iii) To my niece, Suzanne McConnell Schreiber.

(iv) To my grandniece, Catherine Lynn Schreiber.

(3) Upon the death of the survivor of Charles H. McConnell, Margery Annis McConnell, Charles Robert Hutchinson, Margery Hutchinson Severence, the children of Charles Robert Hutchinson, the daughters of Margery Hutchinson Severence, Suzanne McConnell Schreiber and Catherine Lynn Schreiber, the remaining balance of said share shall be transferred to and become a part of the Elizabeth Hutchinson Trust "D", created under this Will.

(c) [Substituted from the codicil.] From the share created for the primary benefit of my niece, Suzanne McConnell Schreiber, distributions shall be made as follows:

(1) During the lifetime of my said niece, all of the net income shall be distributed to her.

(2) After the death of my said niece, all of the net income shall be distributed in the following order, that is to say, distributions shall be made under paragraphs (ii) and (iii) only if distributions cannot be made under paragraphs (i) and (ii), respectively.

(i) To the children of Suzanne McConnell Schreiber born after 1955, in equal portions or to the survivor.

(ii) To my children, Charles Robert Hutchinson and Margery Hutchinson Severence, in equal portions, or to the survivor.

(iii) To the children of Charles Robert Hutchinson and the daughters of Margery Hutchinson Severence, in equal portions, or to the survivor.

(3) Upon the date of the death of the survivor of Charles H. McConnell, Suzanne McConnell Schreiber, the children of Suzanne McConnell Schreiber born after 1955, Charles Robert Hutchinson, Marjorie Hutchinson Severence, the children of Charles Robert Hutchinson and the daughters of Marjorie Hutchinson Severence, the remaining balance of said share shall be transferred to and become a part of the Elizabeth Hutchinson Trust "D" created under this Will.

(d) During the lifetime of Charles H. McConnell, the sum of Three Thousand ($3,000) Dollars shall be distributed to him each year on December 31, out of the corpus of the Elizabeth Hutchinson Trust "C", and said sum shall be charged equally against the three shares comprising said corpus.

Section 8.

The Elizabeth Hutchinson Trust "D" is created for the purpose of providing educational benefits, and in order to insure maximum flexibility, I direct that the income of the trust be accumulated and added to the corpus, and that distributions be made out of the corpus, as follows:

(a) The Trustee shall make periodic distributions for the purpose of providing or helping to provide college educations in accordance with the conditions and requirements herein set forth.

(1) All members of the following classes shall be eligible for benefits hereunder: Lineal descendants of my daughter, Margery Hutchinson Severence, born after 1955; lineal descendants of my son, Charles Robert Hutchinson, born after 1959; lineal descendants of my niece, Suzanne McConnell Schreiber, born after 1955; grandchildren of my nephew, Charles James McConnell; and lineal descendants of said grandchildren.

(2) The Trustee shall compile and maintain during the continuance of the trust a record of births, marriages, divorces, legal separations, deaths, addresses, high school entrances, and any other statistics that may be necessary or desirable for the purpose of enabling the Trustee to determine the persons eligible for benefits and to notify them of such eligibility. It shall be the duty of each parent or guardian of a child who is eligible for benefits to furnish such statistics for such child, and it shall be the duty of each eligible child who desires benefits to see that all such statistics pertaining to his eligibility have been so furnished. The Trustee's record shall be turned over to the Iowa State Board of Regents at the end of the trust period.

(3) The Trustee shall notify each eligible child of his eligibility on or before his fifteenth (15th) birthday and again during the first half of his senior year in high school, so he will be able to properly plan his high school courses for college entrance.

(4) Each eligible child for whom statistical information has been furnished the Trustee, shall be entitled to benefits upon furnishing the Trustee with evidence of his admission to the college he plans to attend. Upon receipt of such evidence, and of any other evidence of the child's intent which the Trustee may reasonably require, the Trustee shall forthwith pay over to him the sum of Five Hundred ($500) Dollars for transportation and personal expenses, and shall obtain from the admission's office of Iowa State University or the State University of Iowa, whichever offers courses that are most similar to the courses the beneficiary intends to take, a detailed estimate of the average cost at such university of dormitory room and board, tuition, fees, books and supplies for the ensuing school year.

A sum equal to such estimate shall be deposited to an interest-bearing account in a government supervised and insured bank or savings and loan association, in the Trustee's name, as trustee for such beneficiary. The Trustee may increase said sum by five (5%) percent to cover any increases that may occur during the year, and any portion of such increase which is not so required may be retained for the following year. * * *

    *       *       *       *       *       *       *

(6) Any beneficiary who in any year shall have earned two-thirds (2/3) of the credit hours recommended by the college for his program and year, and whose progress report shall indicate a sincere effort to obtain a college education, shall be entitled to benefits, determined in the same manner, for the succeeding year, until he shall have received benefits for four years; provided that such benefits may be spread over an elapsed period of not more than six (6)

years if, because of circumstances beyond his reasonable control, the beneficiary requires such longer period.

If a beneficiary shall have earned four full years' credits within the time prescribed herein, with an overall grade average equal to or above the all-college average for his college, and shall be recommended by his college faculty for further work toward a degree requiring in excess of four years, then upon his admission to such further work, he shall be entitled to benefits, determined in the same manner, for the minimum additional period required for such degree.

(b) If any child who would be eligible for benefits under paragraph (a) shall notify the Trustee in writing on or after his twenty-first (21st) birthday that he does not desire such benefits, the Trustee shall distribute to him the sum of Three Thousand ($3,000) Dollars. If thereafter, before his twenty-seventh (27th) birthday, such child shall enter college, he shall be entitled to benefits in accordance with the provisions of paragraph (a), except that the first Three Thousand ($3,000) Dollars of such benefits shall be offset against the distribution theretofore made to him.

(c) I direct my Trustee to inquire at appropriate times concerning the plans for secondary school educations for the children of my son, Charles Robert Hutchinson, and if such plans contemplate any unusual requirements for clothing, books, tuition and the like, the Trustee is authorized to distribute for such requirements, in whatever manner he deems advisable, up to Five Hundred ($500) Dollars per year for not more than four years for each such child.

(d) I have excluded my grandson, John Waldon Severence II from the classes eligible for benefits under paragraph (a) for the reason that I believe his paternal grandparents will wish to furnish any financial assistance he, as their son's namesake, may need to obtain a college education, and I direct the Trustee to pay to said grandson on his eighteenth (18th) birthday, the sum of Three Thousand ($3,000) Dollars.

(e) I have omitted the children of my nephew, Charles James McConnell, from the classes eligible for benefits under paragraph (a) for the reason that I believe their maternal grandparents will furnish any financial assistance they may need to obtain college educations, and I direct the Trustee to pay to each such child on his eighteenth (18th) birthday, the sum of Three Thousand ($3,000) Dollars.

(f) At the end of the trust period defined in Section (1) of this ITEM XXIV, the remaining corpus of the trust shall be paid over to the Iowa State Board of Regents and held permanently as the "Elizabeth A. Hutchinson Scholarship Fund", to provide scholarships to students of any college under said Board's jurisdiction. In the administration of such fund, the Board of Regents shall have complete discretion as to the investments without being restricted by the laws of the State of Iowa pertaining to such funds, and may designate one or more of the treasurers of the colleges under its jurisdiction to act as depository or depositories therefor. While neither the Board of Regents nor any college under its jurisdiction shall be restricted in the selection of candidates for scholarships, it is my hope and desire that preference will be given to lineal descendants of the following: my husband, Charles S. Hutchinson; my sister, Margery Annis McConnell; my brother, Donald W. Annis; my brother, Dr. Albert David Annis; my sister-in-law, Elsie Matheny Annis and my daughter-in-law, Patty Messer Hutchinson, who meet the qualifications established for such scholarships.

\*       \*       \*       \*       \*       \*       \*

Section 13.

As to each of Trusts "A", "B" and "C", if, before the corpus is completely distributed as provided herein, the trust period shall end or the market value of the corpus on any accounting date shall be less than Ten Thousand ($10,000) Dollars, then in either event such trust shall be terminated and the corpus shall be distributed to the same beneficiaries and in the same proportions as though it constituted net income which was then distributable.

The will provided that the word "children" and "grandchildren," as used therein, was to include legally adopted children.

For the sake of brevity and to save some of the confusion of repetition of proper names, Charles Robert Hutchinson will be identified at times hereafter as decedent's son, Margery Annis McConnell as her sister, Charles James McConnell as her nephew, and Suzanne McConnell Schreiber as her niece.

Daughters were born to decedent's nephew and his wife September 8, 1963, and June 7, 1966. The wife's date of birth was September 14, 1939. A daughter was born to decedent's daughter September 12, 1963.

The executor of decedent's estate, Charles H. McConnell, was named trustee for all of the trusts. He was given broad powers over the management of the trust properties including the authorization to make loans to decedent's son and daughter for certain purposes.

The portion of decedent's residuary estate available for the testamentary trusts at the date of decedent's death, without any allowance for Federal estate tax, was valued at $1,562,644.31 computed as follows:

| | | |
|---|---|---|
| Total gross estate | | $1,945,561.28 |
| Less total of deductions shown on Schedules J and K of return | | 110,692.23 |
| | | 1,834,869.05 |
| Less: | | |
| Specific bequests | $69,549.40 | |
| Insurance proceeds | 110,000.00 | |
| State inheritance taxes | 83,820.63 | |
| Insurance payment | 8,854.71 | 272,224.74 |
| Residue before payment of Federal estate tax liability | | 1,562,644.31 |

The estate consisted primarily of stock in three corporations. However, included in the estate was real estate in Chicago which at the time of decedent's death was under a "net income" lease to Beatrice Foods Co. for an unexpired term of 178 years. Real estate in Des Moines was also included.

Except for some variation in the number and fair market value of shares of Beatrice Foods Co., American Telephone & Telegraph, and

General Motors held by the trusts, there have been no substantial year-to-year changes in the trust assets. The following table shows the value of the trust assets and trust income for the years 1964 to 1967, inclusive:

| | Trust A | | Trust B | |
|---|---|---|---|---|
| | Asset value | Income | Asset value | Income |
| 1964 | $363,500.06 | $2,964.44 | $355,422.37 | $2,700.44 |
| 1965 | 364,292.00 | 14,262.83 | 356,133.25 | 12,066.74 |
| 1966 | 305,243.13 | 13,852.34 | 303,159.13 | 11,723.67 |
| 1967 | 345,798.75 | 13,157.15 | 339,542.38 | 11,052.91 |

| | Trust C | | Trust D | |
|---|---|---|---|---|
| | Asset value | Income | Asset value | Income |
| 1964 | $363,500.06 | $2,964.44 | $363,500.06 | $2,964.43 |
| 1965 | 364,292.00 | 14,262.83 | 380,513.55 | 13,792.36 |
| 1966 | 305,243.13 | 13,852.34 | 331,296.03 | 10,406.35 |
| 1967 | 345,798.75 | 13,157.15 | 382,013.57 | 10,624.42 |

It is professionally estimated that the overall life of the trusts will be about 100 years from the date of decedent's death. This is based on 15 designated lives in being (the birth date of the youngest was January 15, 1960) at testator's death plus 21 years.

## OPINION

Our question is whether under decedent's will there was a bequest to charity, the Board of Regents of the State of Iowa, through Trust D of an ascertainable value at the date of decedent's death. The Board of Regents is admittedly an instrumentality of the State of Iowa.[1]

In each of the trusts, A, B, C, and D, the family beneficiaries are to receive specified payments and/or annual minimum payments or share in the income during their lives and the remainder of the trust funds is to be paid into Trust D, subject to certain contingencies. Trust D is for the primary purpose of providing educational funds for decedent's lineal descendants and those of her niece and nephew with remainder over to the Board of Regents for use as a scholarship fund to be known as the Elizabeth A. Hutchinson Scholarship Fund. The trust period is to be for the lives of the above-named beneficiaries (except the daughter-in-law, Patty Messer Hutchinson), or the survivors of them, plus 21 years. It was estimated that the overall life of the trusts would be about 100 years.

---

[1] Although respondent has at one time questioned whether the charitable gift was not impaired by the provision of decedent's will that it was her "hope and desire" that in the selection of candidates for scholarship "preference will be given to certain lineal descendants," respondent makes no contention of this point in his brief.

It is the present value of the amount remaining in Trust D, after all authorized distributions during the trust period, that the petitioner contends qualified for the charitable deduction.

Respondent's position is that because of the contingencies governing the vesting of the charitable bequest in the Board of Regents the gift to charity, if any, is so uncertain and indefinite as to have no presently ascertainable value. He argues that there is more than a remote possibility that the corpus of one or all of the trusts will be exhausted by the permissive invasions of corpus before the end of the trust period so that there may be no "pouring over" into Trust D from the other trusts and no remainder of Trust D for the Board of Regents.

Petitioner contends, on the other hand, that any invasion of trust corpus by the life beneficiaries is so remote as to be negligible. For the reasons stated below, we agree with the respondent's position.

Fairly definite tests have been established for determining the deductibility under section 2055(a)[2] of charitable gifts of remainder trust interests. Under the Commissioner's regulations, sec. 20.2055-2, the gift to charity is deductible, generally, only where the amount of the gift is "presently ascertainable" and the possibility of the failure of its passing to the charity is "so remote as to be negligible." The deduction is denied "if by reason of all the circumstances and conditions" it appears that a charity may never enjoy the benefits of the gift.

In *Merchant's Bank* v. *Commissioner*, 320 U.S. 256 (1943), the Supreme Court, at pages 259 and 261, said:

The case * * * turns on whether the bequests to the charities have, as of the testator's death, a "presently ascertainable" value or, put another way, on whether, as of that time, *the extent to which the widow would divert the corpus from the charities could be measured accurately.*

\* \* \* \* \* \* \*

Congress and the Treasury require that *a highly reliable appraisal* of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. * * * Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. And, in these cases, the taxpayer

---

[2] SEC. 2055. TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.

(a) IN GENERAL.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made before the date prescribed for the filing of the estate tax return)—

has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable. * * * [Emphasis added.]

See also *Henslee* v. *Union Planters Bank*, 335 U.S. 595 (1949).

In *Humes* v. *United States*, 276 U.S. 487 (1928), where the charitable gift was conditioned upon the death of a 15-year-old beneficiary (niece) without issue, before reaching age 40, the Court said:

Neither taxpayer, nor revenue officer—even if equipped with all the aid which the actuarial art can supply—could do more than guess at the value of this contingency. It is clear that Congress did not intend that a deduction should be made for a contingent gift of that character. * * *

In *Commissioner* v. *Sternberger's Estate*, 348 U.S. 187 (1955), the Court emphasized, adhering to its ruling in the *Humes* case, that there can be no deduction where there is "no assurance that charity will receive the bequest or some determinable part of it."

Petitioner makes the argument that the contingencies attending the charitable gift are not absolute and should give way to the indisputable charitable intent of the testator. We do not agree. The several contingencies relating to the trust corpus are real and substantial and obviously were intended to be given priority over the gift to charity. In our opinion they present an insurmountable obstacle to the deduction sought. They are in fact quite similar to (as to Trust D) and perhaps even more persuasive than those in the case of *Estate of Philip Dorsey*, 19 T.C. 493 (1952), where deduction was denied because of the uncertainty of the extent of the possible invasion of trust corpus for the live beneficiaries. We said in that case:

Furthermore, the extent of permissible invasion of corpus under Item 20 for the purpose of providing scholarships for the grandnieces and grandnephews of decedent cannot be ascertained. The decedent was survived by eleven grandnieces and grandnephews whose ages at his death were from 2 to 16 years. It is impossible to determine how many more grandnieces and grandnephews may be born during the term of the trust. The number of possible recipients of scholarship awards, even as of the date of decedent's death, was considerable. In view of the size of the trust fund and the other burdens placed on it by the will, the possibility, if not probability, that some part of corpus will be used for providing scholarships is apparent.

A similar result was reached in *Griffin* v. *United States*, 267 F. Supp. 142 (E.D. Ky. 1967), affd. 400 F. 2d 612 (C.A. 6, 1968), where the charitable bequest, the remainder of an educational trust fund, was to take effect after the education of all of the grandchildren, including those unborn at the time of the testator's death. The court there said:

Life estates are much more readily and accurately ascertainable than the benefit to a class which can be enlarged by the volition of three separate couples of child bearing age. It is also not to be denied that the more grandchildren that can be born, the greater the possibility of income drain from charitable uses. The

Humes and Sternberger decisions, supra, do not allow a deduction based on fact situations such as the present case where an increase in grandchildren will substantially affect the amount of the charitable bequest. * * *

As to the effect of permissive invasions of trust corpus generally on the deductibility of bequests of remainders to charities, after life estates, see *Kline* v. *United States*, 202 F. Supp 849 (N.D. W. Va. 1962), affirmed per curiam 313 F. 2d 653 (C.A. 4, 1963), and cases there reviewed.

In *Henslee* v. *Union Planters Bank*, *supra*, the Court pointed out the distinction between an indefinite or indeterminable right of the life beneficiary to corpus disbursements, as in the *Merchants Bank* case, and one where the disbursements are limited so as to conform to some ready standard as in *Ithaca Trust Co.* v. *United States*, 279 U.S. 151 (1929). In the *Ithaca Trust Co.* case the distributions were authorized to maintain the life beneficiary "in as much comfort as she now enjoys." In the *Henslee* case corpus could be invaded for the "pleasure", "comfort and welfare" of the testator's mother. The Court said that as in the *Merchants Bank* case the salient fact was that the purposes for which the corpus might be invaded did not lend themselves to reliable prediction.

Our first question therefore is whether the deduction of any gift to charity is defeated by the possibility of invasion and exhaustion of the trust corpus before the gift ever takes effect. This question requires a careful examination of each of the trusts with particular regard to the number and potential lifetimes of the beneficiaries, their prospective financial needs, and the capacity of the trust funds to withstand the authorized distributions.

In Trust A the principal beneficiary is decedent's daughter (Margery Hutchinson Severence) who is to receive all of the remaining trust income for life, with an annual minimum of $2,400, after certain specific payments of income to other named beneficiaries, referred to in the will as "paragraph (b)" beneficiaries. The "paragraph (b)" beneficiaries are decedent's sister-in-law, Elsie Matheny Annis, who is to receive $1,200 per year as long as she remains unmarried, and decedent's brother, Albert David Annis, who is to receive $2,000 per year. In case the decedent's daughter should become widowed, divorced, or legally separated, decedent's sister-in-law (if unmarried) and brother are each to receive in lieu of annual payments a lump sum of $3,000 out of the trust corpus with no further distributions to those beneficiaries after the daughter's death. If no distributions are required to be made to the sister-in-law and brother, the annual payments to the daughter are to be increased to an annual minimum of $4,800.

After the death of decedent's daughter and after distributions to the "paragraph (b)" beneficiaries, the income is all to be distributed first to the daughters of decedent's daughter[3] with minimum distributions of $1,200 per annum, then to decedent's son, Charles Robert Hutchinson, and then to his children. Upon the death of the last surviving income beneficiary the corpus and any undistributed income is to be transferred to Trust D.

The minimum distributions are subject to a cost of living adjustment every 5 years for substantial changes in the cost of living. In addition, the minimum distributions can be increased out of corpus by a maximum of 100 percent of the minimum quarterly distribution in any year if such beneficiaries suffer some extreme financial hardship beyond their reasonable control.

Section 13 of Item XXIV of the will provides that Trusts A, B, and C will terminate if, "before the [trust] corpus is completely distributed," the trust period shall end or the trust corpus at any accounting date shall be less than $10,000 and thereupon the remaining trust funds will be paid over to the income beneficiaries. In this event, there would be no pourover into Trust D.

The plan for the administration of Trust A under the provisions of decedent's will is complicated and involves various contingencies. To determine what value the remainder of the trust funds might have had at the date of decedent's death seems to us to be an impossible task. Actuarial tables might afford a sufficiently accurate means of determining the expected lifetimes of the life beneficiaries in being at the time of decedent's death but not the lifetimes of the unborn beneficiaries and not the amounts of the distribution. For instance, at the time of decedent's death the principal income beneficiary of Trust A, decedent's daughter, was 32 years of age and was married. A daughter, a second beneficiary, was born to her soon after decedent's death. Whether there would be other daughters,[4] either born to her or adopted by her, and how many, we have no possible way of knowing. There are no accepted actuarial tables for determining such eventualities.

Successor life beneficiaries of the trust before the "pourover" into Trust D were Charles Robert Hutchinson, a son, and his children. He was 33 years old at the date of decedent's death and was married and had one 3-year-old son. There was no way of knowing how many other children might be born to or adopted by him.

---

[3] The will specifically provided that the income was to go to the daughters of the decedent's daughter after the death of the latter even though at date the will was executed and at the date of decedent's death her daughter had two sons but no daughters. A daughter was born to the decedent's daughter however shortly after the decedent's death.

[4] See fn. 3, *supra*.

Trust B and C involve equally unidentifiable beneficiaries and uncertain distributions of both income and corpus.

Trust B is for the primary benefit of decedent's son (Charles Robert Hutchinson) who is to receive the income for life, after certain "paragraph (b)" income distributions, but not less than $4,800 per year. He was in his early thirties at the date of decedent's death, was married and had a 3-year-old son. The "paragraph (b)" beneficiaries are decedent's brother, Albert David Annis, who is to receive $1,000 per year for life and decedent's sister-in-law, Elsie Matheny Annis, who, as long as she remained unmarried, was to receive $600 per year. Other secondary beneficiaries who are to take after the death of Charles Robert Hutchinson are his surviving widow, who is to receive $2,400 per year for life as long as she remains unmarried, and his surviving children, who are to receive minimum annual distributions of $2,400 each. The son's surviving grandchildren are to receive all of the remaining income, after the required distributions to the "paragraph (b)" beneficiaries, in equal shares. At the time of decedent's death there was no way of knowing how many children would be born to or adopted by Charles Robert Hutchinson or how many grandchildren would survive him. Nor was there any way of determining the probability or extent of the invasion of trusts corpus to supply the minimum distributions.

Trust C consists of three equal shares and is for the primary benefit of decedent's sister, her brother-in-law, Charles H. McConnell, and her niece. The sister and brother-in-law are to share the income for life with minimum distributions of $2,400 each. There are numerous secondary beneficiaries, including the niece under the brother-in-law's and sister's shares and the sister under the brother-in-law's share.

The secondary beneficiaries under the brother-in-law's share are in order, the sister for $2,400 minimum, the niece for $1,200 minimum and her children born after 1955 equally. Under the sister's share secondary beneficiaries in order are the son and daughter equally, then the daughters of the daughter and the children of the son equally, then the niece, and last the grandniece. Under the niece's share the secondary beneficiaries in order are, children of the niece born after 1955, the son and daughter equally, and the daughters of the daughter and children of the son equally.

In addition to the above, $3,000 a year is to be distributed to the brother-in-law out of the corpus of Trust C and charged equally to the three shares comprising the corpus.

As in Trust A, the remaining trust funds in Trusts B and C, after death of the last surviving beneficiary, are to be transferred to Trust D.

In each of the trusts, A, B, and C, any excess of distributions over income is to be charged against corpus and the trustee is authorized to adjust the amount of the distributions to conform to "substantial changes in the cost of living." Further, the trustee is authorized to make distributions out of corpus each year to the primary beneficiaries and the sister-in-law who might suffer "some extreme financial hardship" of up to 100 percent of their minimum quarterly distributions for such year.

Thus, with Trusts B and C, as with Trust A, there is no reasonably accurate method of determining who all the beneficiaries will be, the distributions to which they may be entitled, or the extent to which such distributions may reduce trust corpus.

Trust D is primarily for the purpose of providing educational benefits for the lineal descendants of decedent's daughter, born after 1955; the lineal descendants of decedent's son, born after 1959; the lineal descendants of decedent's niece, born after 1955; and the grandchildren of decedent's nephew and their lineal descendants. The amount of trust assets that will remain in Trust D for transfer to the Board of Regents is at least as uncertain as the remainders of the other trusts.

A major unknown quantity is the number of lineal descendants who may qualify for distributions. At the date of decedent's death, her son, daughter, niece, and nephew were all married and capable of giving birth to or adopting more children since their ages ranged at that date from 27 to 33. There is no telling how many more children they would have. Therefore, it is impossible to determine the number of children, their children, and their children's children, and so on during the period of the trust, can have. Other unknown quantities are the amount of the distributions that may be required for a college education and graduate school education over the 100-year estimated life of the trust and potential trust earnings over the trust period. There is no possible means of determining how many of the beneficiaries entitled to the education benefits may choose to accept the $3,000 cash payment in lieu of the educational benefits.

Thus, the possibility of an insufficiency of trust income to meet the necessary distributions with resulting invasions of trust corpus, seems to us to require a disallowance of a deduction for any charitable gift. It is not beyond reasonable doubt that there may be no remaining funds in Trust D at the end of the trust period. See *Estate of Philip Dorsey, supra*. That case, as contrasted with the present one, involved a shorter trust period, a smaller class of potential private beneficiaries, and scholarship amounts which were limited to $1,000 yearly for no more than 4 years. The uncertainties found by this Court to be troublesome in *Dorsey* are magnified in the instant case. Even if we had found

that the remainders of Trusts A, B, and C that are to pour over into Trust D had presently ascertainable values, the uncertainties of D alone would disqualify any charitable deduction.

Hence, with all due considerations to what must have been the altruistic motives of decedent to the charity, we think that the deduction claimed must be disallowed.

In order to reflect an increased deduction for State inheritance taxes as set forth in the stipulation of facts,

*Decision will be entered under Rule 50.*